# EXHIBIT "A"

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:  13                       │
│ DATE FILED: 4/20/07              │
└─────────────────────────────────┘
```

At the United States District
Court held in and for the
Southern District of New York, at
the Courthouse, 500 Pearl Street,
in the City, County and State of
New York, on this   day of March,
2007

------------------------------------x

COMMERCE BANK, N.A.,

            Plaintiff,

                           CASE NO.: 06 CIV 8301 (GEL)

                           Civil Action

                           FINAL JUDGMENT AND
                           ORDER OF ARREST OF VESSEL
                           AND POSSESSION OF COLLATERAL

          -vs-

JDJ MARINE, INC. DBA LEISURE
YACHT CHARTERS, DAVID E. SOMMERHALTER,
PAULETTE SOMMERHALTER, JOSEPH N.
TURI, JEAN TURI, and
JDJ MARINE, INC. DBA LEISURE
YACHT CHARTERS, DAVID E.
SOMMERHALTER, PAULETTE SOMMERHALTER,
JOSEPH N. TURI AND JEAN TURI,
and DIPLOMAT MOTOR YACHT,
OFFICIAL NUMBER D229917, GROSS
TONNAGE 99, NET TONNAGE 67,
YEAR BUILT 1930, PIER 84,
WEST 43RD STREET, NEW YORK,
NEW YORK and Her Engines,
Boilers, etc.,

                  Defendants.

------------------------------------x

      THIS MATTER being opened to the Court upon the

application of the plaintiff, COMMERCE BANK, N.A., by its attorneys, OSTROWITZ & OSTROWITZ, ESQS., and upon all of the prior papers and proceedings heretofore had herein, and the plaintiff having pleaded and proven the elements of its causes of action, and no appearance having been made by the defendants with respect thereto, nor has an Answer been filed on behalf of any of the defendants herein, and good cause appearing therefor,

NOW, upon reading and filing the Order to Show Cause, the Affirmations of ALAN R. OSTROWITZ, ESQ., dated the 27th day of February, 2007, together with the Summons and Verified Complaint, and proof of due service thereof, and there being no answer filed, request for an extension of time or opposition with respect thereto, it is,

ORDERED AND ADJUDGED, that the defendants, jointly and severally, and each and all of them, be and they hereby are foreclosed of any and/or all right, title and/or interest in and/or to the subject personal property collateral, described more fully hereinafter and, additionally, the defendants be and the same hereby are foreclosed of any and/or all right, title and/or interest in and or to the Federally documented vessel, pursuant to the plaintiff's Preferred Ship's Mortgage, i.e., DIPLOMAT MOTOR YACHT,

- 2 -

OFFICIAL NUMBER D229917, GROSS TONNAGE 99, NET TONNAGE 67, YEAR BUILT 1930, PIER 84, WEST 43RD STREET, NEW YORK, NEW YORK and Her Engines, Boilers, together with all log books, manuals, trip records, maintenance records, inspection reports, seaworthiness certificates, and other historical records or information relating to the vessel, all accounts, general intangibles, instruments, monies, payments and all other rights, arising out of a sale, lease or other disposition of any of the property described in the collateral section of the Preferred Ship Mortgage, all proceeds, records and data relating to the foregoing, etc., and, further, in addition thereof, said defendants be and hereby are justly indebted to the plaintiff in the sum of $729,936.24, together with interest thereon at the rate of $191.78 per diem, to the date of entry of Judgment, and counsel fees in the sum of $7,370.00, and costs and disbursements, thereby aggregating the total sum of $739,424.19, calculated through and including March 1, 2007, for which sum Judgment in favor of the plaintiff and against the defendants is hereby entered; and, it is further,

ORDERED AND ADJUDGED, that JDJ MARINE, INC. DBA LEISURE YACHT CHARTERS, DAVID E. SOMMERHALTER, PAULETTE SOMMERHALTER, JOSEPH N. TURI and JEAN TURI, shall promptly and forthwith, upon service of the

- 3 -

within Order and Judgment, turn over to the plaintiff, the collateral, as the same is more fully described in the Complaint herein, and/or the products and proceeds thereof, i.e., equipment and machinery, including power-driven machinery and equipment, furniture and fixtures now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts and tools belonging thereto or for use in connection therewith, all inventory, raw materials, work in process and supplies now owned or hereinafter acquired, all accounts receivable now outstanding or hereafter arising, all contract rights and general and tangibles now in force or hereafter acquired, all instruments and chattel paper now owned or hereinafter acquired; and it is further,

ORDERED AND ADJUDGED, that the plaintiff has a valid, perfected security interest and lien in and on the collateral and/or the products and proceeds thereof, presently in possession of the defendants, as the same is described more fully in the Complaint, and the plaintiff herein is hereby given leave to hire such agents and representatives as are necessary to remove the collateral from the premises of the defendants, or wherever else the same may be located, without force, restraint or otherwise disturbing the peace, and the plaintiff is hereby given leave to

remove the collateral from its present location and, further, said defendants be and they hereby are foreclosed and any and/or all right, title and/or interest, in and/or to the subject collateral; and, it is further,

ORDERED AND ADJUDGED, that, by virtue of the defaults of the defendants, the plaintiff is entitled to the immediate arrest and seizure of the said vessel, i.e., DIPLOMAT MOTOR YACHT, OFFICIAL NUMBER D229917, GROSS TONNAGE 99, NET TONNAGE 67, YEAR BUILT 1930, PIER 84, WEST 43RD STREET, NEW YORK, NEW YORK and Her Engines, Boilers, etc., together with all log books, manuals, trip records, maintenance records, inspection reports, seaworthiness certificates, and other historical records or information relating to the vessel, all accounts, general intangibles, instruments, monies, payments and all other rights, arising out of a sale, lease or other disposition of any of the property described in the collateral section of the Preferred Ship Mortgage, all proceeds, records and data relating to the foregoing, etc., and the United States Marshal for the Southern District of New York, or any other District in which the subject vessel may be found, shall immediately seize and arrest the subject vessel, and expose the same for sale to satisfy the plaintiff's judgment and claims which are set forth herein; and, it is further,

- 5 -

ORDERED AND ADJUDGED, that in order to execute the within Judgment, the plaintiff is further given leave to deliver a copy of the within Judgment, certified as a true copy by the attorneys for the plaintiff, to any Officer of this Court within the Distict having jurisdiction thereof to execute the within Judgment without further Order or process of this Court and said Officer may remove the collateral and/or the products and proceeds thereof from the premises of the defendants, or wherever else the same may be located, by the use of such reasonable force, restraint or otherwise as may be necessary in order to remove the said collateral from its present location; and, it is further,

ORDERED AND ADJUDGED, that upon receipt of the said collateral as aforesaid, the plaintiff may sell, lease or otherwise dispose of the said collateral in a commercially reasonable manner and/or apply the products and proceeds thereof to satisfy the obligation due and owing to the plaintiff hereunder, and, in addition thereto, such additional fees, costs and/or disbursements caused by the repossession of the collateral pursuant to the terms hereof; and, it is further,

ORDERED AND ADJUDGED, that, following such sale, lease or

other disposition of the collateral and/or application of the products and proceeds as aforesaid, the defendants shall be liable for any deficiency balance remaining, for which sum the plaintiff may apply to this Court upon affidavit, ex parte, for such additional sum, if any; and, it is further,

ORDERED AND ADJUDGED, that the defendants, their agents, servants, representatives and all other persons, known or unknown, acting in their behalf or in concert with them, or any of them, be and they hereby are permanently restrained and enjoined from transferring, assigning, secreting or otherwise moving the collateral or dealing with the products and proceeds thereof subject herein from the location set forth in the security agreement, creating any rights in said property, or otherwise dealing with same; and, it is further,

ORDERED AND ADJUDGED, that the plaintiff may, if so elects, sell the subject collateral at public auction, in accordance with the usual rules and regulations of the public auctioneer, and the collateral may be struck off at the highest and best price obtained at such public auction, and said auction shall be deemed by this Court to have been conducted in a commercially reasonable manner; and, it is further,

ORDERED AND ADJUDGED, that the plaintiff may either take possession of the collateral pursuant to the provisions of this Order and Judgment, and/or may deliver an Execution to the Marshal for the amount set forth hereinabove, as the plaintiff may so elect.

Dated:   New York, New York
~~March~~ April 20 , 2007

HON. GERARD E. LYNCH, U.S.D.J.

**THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON** _4/23/07_

- 8 -

# EXHIBIT "B"



U.S. SMALL BUSINESS ADMINISTRATION

### U.S. Small Business Administration

## NOTE

| | |
|---|---|
| SBA Loan # | PLP-440-473-4007 |
| SBA Loan Name | J.D.J. Marine, Inc. d/b/a Leisure Yacht Charters |
| Date | July 5, 2001 |
| Loan Amount | $650,000.00 |
| Interest Rate | Variable |
| Borrower | J D J Marine, Incorporation d/b/a Leisure Yacht Charters |
| Operating Company | |
| Lender | Commerce Bank, N.A. |

1. **PROMISE TO PAY:**

In return for the Loan, Borrower promises to pay to the order of Lender the amount of Six Hundred Fifty Thousand & 00/100 Dollars, interest on the unpaid principal balance, and all other amounts required by this Note.

2. **DEFINITIONS:**

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

3. **PAYMENT TERMS:**

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

The interest rate on this Note will fluctuate. The initial interest rate is 10.50% per year. This initial rate is the prime rate on the date SBA received the loan application, plus 2.50%. Interest on this note is computed on a 360/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year.

Borrower must pay principal and interest payments of $7,185.09 every month, beginning on the 1st day of the month after the 1st full month from date of note; payments must be made on the first calendar day in the months they are due.

SBA FORM 147 (10/22/98) Previous editions obsolete

Loan No: 1361500742

**PROMISSORY NOTE**
**(Continued)**

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period").

The "Prime Rate" is the prime rate in effect on the first business day of the month in which an interest rate change occurs, as published in the Wall Street Journal on the next business day.

The adjusted interest rate will be 2.50% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change. The initial interest rate must remain in effect until the first change period begins.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

All remaining principal and accrued interest is due and payable 15 years from date of Note.

Late Charge : If a payment on this Note is more than 15 days late, Lender may charge Borrower a late fee of up to 5% of the unpaid portion of the regularly scheduled payment.

Prepayment Charge: In addition to any other fees referenced in this note, when, in any one year, a Borrower voluntarily prepays more than 25 percent of the outstanding principal balance of the loan, the Borrower must pay to SBA a prepayment fee as follows:

a) During the first year after the date on which the loan was first disbursed, 5 percent of the prepayment amount;

b) During the second year after the date on which the loan is first disbursed, 3 percent of the prepayment amount; and

c) During the third year after the date on which the loan is first disbursed, 1 percent of the prepayment amount.

4. RIGHT TO PREPAY:

Borrower may prepay this Note. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

    A. Give Lender written notice;
    B. Pay all accrued interest; and
    C. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date Lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph B.

If Borrower does not prepay within 60 days from the date Lender receives the notice, Borrower must give Lender a new notice.

5. DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

    A. Fails to do anything required by this Note and other Loan Documents;
    B. Defaults on any other loan with Lender;
    C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

SBA FORM 147 (10/22/98) Previous editions obsolete

Loan No: 1361500742

## PROMISSORY NOTE
### (Continued)

Page 3

    D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

    E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

    F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

    G. Fails to pay any taxes when due;

    H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;

    I. Has a receiver or liquidator appointed for any part of their business or property;

    J. Makes an assignment for the benefit of creditors;

    K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

    L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

    M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

6. LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

    A. Require immediate payment of all amounts owing under this Note;

    B. Collect all amounts owing from any Borrower or Guarantor;

    C. File suit and obtain judgement;

    D. Take possession of any Collateral; or

    E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

7. LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

    A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

    B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

    C. Release anyone obligated to pay this Note;

    D. Compromise, release, renew, extend or substitute any of the Collateral; and

    E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

8. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

9. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

10. GENERAL PROVISIONS:

    A. All individuals and entities signing this Note are jointly and severally liable.

    B. Borrower waives all suretyship defenses.

SBA FORM 147 (10/22/98) Previous editions obsolete

Loan No: 1361500742

# PROMISSORY NOTE
## (Continued)

Page 4

C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F. If any part of this Note is unenforceable, all other parts remain in effect.

G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

11. STATE-SPECIFIC PROVISIONS:

12. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

BORROWER:

J D J MARINE, INCORPORATION D/B/A LEISURE YACHT CHARTERS    ATTEST:

By: _____ (Seal)          By: _____ (Seal)
David E. Sommerhalter, President of J D J Marine,          Jean F. Turi, Secretary
Incorporation d/b/a Leisure Yacht Charters

( Corporate Seal )



*012000000013615007420136151O*

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $644,175.90 | 11-08-2001 | 11-01-2016 | 1361500742 | 17NA | BR#SBA3 | TRO | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** J D J Marine, Incorporation d/b/a Leisure Yacht   **Lender:** Commerce Bank, N.A.
Charters (TIN: 13-4168535)                                                1701 Route 70 East
113 Palisade Avenue                                                       Cherry Hill, NJ 08034
Emerson , NJ 07630

---

**Principal Amount: $644,175.90**       **Initial Rate: 5.000%**       **Date of Agreement: November 8, 2001**

DESCRIPTION OF EXISTING INDEBTEDNESS.  A $650,000.00 SBA Term Loan was granted to Borrower on July 5, 2001, with a current maturity date of July 5, 2016.

DESCRIPTION OF CHANGE IN TERMS.  Effective the date of this agreement, the principal and interest payments will be defer until April 1, 2002, with a new maturity date of November 5, 2016, payments are more fully describe below.

The interest rate on this Change in Terms will fluctuate.  The initial interest rate is 7.50% per year.  This initial rate is the prime rate on the date SBA received the loan application, plus 2.50%. Interest on this note is computed on a 360/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days.  Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year.

Borrower's payment will be defer until April 1, 2002.

After the defer period, Borrower must pay principal and interest payments of $5,252.33 every month; payments must be made on the first calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

Lender may adjust the interest rate for the first time no earlier than the first calendar day of the first month after initial disbursement.  The interest rate will then be adjusted each calendar quarter (the "change period").

The "Prime Rate" is the prime rate in effect on the first business day of the month in which a change occurs, as published in the Wall Street Journal on the next business day. The adjusted interest rate will be 2.50% above the Prime Rate.

Lender will adjust the interest rate on the first calendar day of each change period.  The change in interest rate is effective on the day whether or not Lender gives Borrower notice of the change.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default.  If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

All remaining principal and accrued interest is due November 05, 2016.

Late Charge: If a payment on this Note is more than 15 days late, Lender may charge Borrower a late fee .

CONTINUING VALIDITY.  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect.  Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.  Nothing in this Agreement will constitute a satisfaction of the obligation(s).  It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement.  If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

BORROWER:

J D J MARINE, INCORPORATION D/B/A LEISURE YACHT CHARTERS

By: _____                         By: _____
David E. Sommerhalter, President of J-D J Marine,            Attest By
Incorporation d/b/a Leisure Yacht Charters

---

LASER PRO Lending, Ver. 5.17.04.05 Copr. Harland Financial Solutions, Inc. 1997, 2001  All Rights Reserved.  - NJ  L:\LPWIN\CFI\LPL\D20C.FC  TR-GR260  PR-144

Loan No: 1361500742  PROMISSORY NOTE (Continued)  Page 4

C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F. If any part of this Note is unenforceable, all other parts remain in effect.

G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

11. STATE-SPECIFIC PROVISIONS:

12. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

BORROWER:

J D J MARINE, INCORPORATION D/B/A LEISURE YACHT CHARTERS     ATTEST:

By: _____(Seal)     By: _____(Seal)
David E. Sommerhalter, President of J D J Marine,                    Jean T. Turi, Secretary
incorporation d/b/a Leisure Yacht Charters

( Corporate Seal )

"The guaranteed portion of the outstanding principal balance of this note has been transferred to a Registered Holder for value."

_____          _____
Andrew J. Pogue                                        October 17, 2001

SBA FORM 147 (10/22/98)  Previous editions obsolete



U.S. Small Business Administration

## UNCONDITIONAL GUARANTEE

| | |
|---|---|
| SBA Loan # | PLP-440-473-4007 |
| SBA Loan Name | J.D.J. Marine, Inc. d/b/a Leisure Yacht Charters |
| Guarantor | Joseph N. Turi |
| Borrower | J D J Marine, Incorporation d/b/a Leisure Yacht Charters |
| Lender | Commerce Bank, N.A. |
| Date | July 5, 2001 |
| Note Amount | $650,000.00 |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated July 5, 2001 in the principal amount of Six Hundred Fifty Thousand & 00/100 Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or for any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

    A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;
    B. Refrain from taking any action on the Note, the Collateral, or any guarantee;
    C. Release any Borrower or any guarantor of the Note;
    D. Compromise or settle with the Borrower or any guarantor of the Note;
    E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

SBA Form 148 (10/98)  Previous editions obsolete

## SBA GUARANTEE
### (Continued)

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;
2) Redeem any Collateral before or after Lender disposes of it;
3) Have any disposition of Collateral advertised; and
4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;
2) Presentment, dishonor, protest, or demand;
3) Execution of the Note;
4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
5) Any change in the financial condition or business operations of Borrower or any guarantor;
6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) Lender failed to obtain any guarantee;
2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
3) Lender or others improperly valued or inspected the Collateral;
4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;
5) Lender impaired the Collateral;
6) Lender did not dispose of any of the Collateral;
7) Lender did not conduct a commercially reasonable sale;
8) Lender did not obtain the fair market value of the Collateral;
9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note; or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

Loan No: 1361500742

**SBA GUARANTEE**
**(Continued)**

Page 3

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

   A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.
   B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.
   C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.
   D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.
   E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.
   F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.
   G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.
   H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.
   I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.
   J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

   None

Loan No: 1361500742

**SBA GUARANTEE**
**(Continued)**

Page 4

**11. GUARANTOR ACKNOWLEDGEMENT OF TERMS:**

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers. THIS UNCONDITIONAL GUARANTEE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS UNCONDITIONAL GUARANTEE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**12. GUARANTOR NAME(S) AND SIGNATURE(S):**

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

**GUARANTOR:**

X _____                    (Seal)
Joseph N. Turi, Individually

Signed, acknowledged and delivered in the presence of:

X _____
Witness

X _____
Witness



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP 440-473-4007 |
|---|---|
| SBA Loan Name | J D J Marine, Incorporation t/a Leisure Yacht Charters |
| Guarantor | Jean T. Turi |
| Borrower | J D J Marine, Incorporation t/a Leisure Yacht Charters |
| Lender | Commerce Bank, N.A. |
| Date | July 5, 2001 |
| Note Amount | 650,000.00 |

1.  GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.  NOTE:

The "Note" is the promissory note dated _____July 5, 2001_____ in the principal amount of
Six Hundred Fifty Thousand and 00/100 _____ Dollars,
from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.  DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

SBA Form 148 (10/88) Previous editions obsolete.

Page 1/5

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

   1) Require presentment, protest, or demand upon Borrower;

   2) Redeem any Collateral before or after Lender disposes of it;

   3) Have any disposition of Collateral advertised; and

   4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

   1) Any default under the Note;

   2) Presentment, dishonor, protest, or demand;

   3) Execution of the Note;

   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

   5) Any change in the financial condition or business operations of Borrower or any guarantor;

   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

   1) Lender failed to obtain any guarantee;

   2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

   3) Lender or others improperly valued or inspected the Collateral;

   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Jean T. Turi

WITNESS:

July 5, 2001



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP-440-473-4007 |
| --- | --- |
| SBA Loan Name | J.D.J. Marine, Inc. d/b/a Leisure Yacht Charters |
| Guarantor | David E. Sommerhalter |
| Borrower | J D J Marine, Incorporation d/b/a Leisure Yacht Charters |
| Lender | Commerce Bank, N.A. |
| Date | July 5, 2001 |
| Note Amount | $650,000.00 |

1.  GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.  NOTE:

The "Note" is the promissory note dated July 5, 2001 in the principal amount of Six Hundred Fifty Thousand & 00/100 Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.  DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or for any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4.  LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

    A.  Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;
    B.  Refrain from taking any action on the Note, the Collateral, or any guarantee;
    C.  Release any Borrower or any guarantor of the Note;
    D.  Compromise or settle with the Borrower or any guarantor of the Note;
    E.  Substitute or release any of the Collateral, whether or not Lender receives anything in return;

SBA Form 148 (10/98) Previous editions obsolete

Loan No: 1361500742

# SBA GUARANTEE
## (Continued)

Page 2

   F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

   G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

   H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

## 5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

## 6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

   A. Guarantor waives all rights to:

      1) Require presentment, protest, or demand upon Borrower;

      2) Redeem any Collateral before or after Lender disposes of it;

      3) Have any disposition of Collateral advertised; and

      4) Require a valuation of Collateral before or after Lender disposes of it.

   B. Guarantor waives any notice of:

      1) Any default under the Note;

      2) Presentment, dishonor, protest, or demand;

      3) Execution of the Note;

      4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

      5) Any change in the financial condition or business operations of Borrower or any guarantor;

      6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

      7) The time or place of any sale or other disposition of Collateral.

   C. Guarantor waives defenses based upon any claim that:

      1) Lender failed to obtain any guarantee;

      2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

      3) Lender or others improperly valued or inspected the Collateral;

      4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

      5) Lender impaired the Collateral;

      6) Lender did not dispose of any of the Collateral;

      7) Lender did not conduct a commercially reasonable sale;

      8) Lender did not obtain the fair market value of the Collateral;

      9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

      10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

      11) Lender made errors or omissions in Loan Documents or administration of the Loan;

      12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

      13) Lender impaired Guarantor's suretyship rights;

      14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

      15) Borrower has avoided liability on the Note; or

      16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

# SBA GUARANTEE
## (Continued)

**7. DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

**8. SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

**9. GENERAL PROVISIONS:**

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

**10. STATE-SPECIFIC PROVISIONS:**

None

Loan No: 1361500742

# SBA GUARANTEE
## (Continued)

Page 4

11. GUARANTOR ACKNOWLEDGEMENT OF TERMS:

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers. THIS UNCONDITIONAL GUARANTEE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS UNCONDITIONAL GUARANTEE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

X _____    (Seal)
David E. Sommerhalter, Individually

Signed, acknowledged and delivered in the presence of:

X _____
Witness

X _____
Witness

SBA Form 148 (10/98)  Previous editions obsolete



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP-440-473-4007 |
| --- | --- |
| SBA Loan Name | J.D.J. Marine, Inc. d/b/a Leisure Yacht Charters |
| Guarantor | Paulette J. Sommerhalter |
| Borrower | J D J Marine, Incorporation d/b/a Leisure Yacht Charters |
| Lender | Commerce Bank, N.A. |
| Date | July 5, 2001 |
| Note Amount | $650,000.00 |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated July 5, 2001 in the principal amount of Six Hundred Fifty Thousand & 00/100 Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or for any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

    A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;
    B. Refrain from taking any action on the Note, the Collateral, or any guarantee;
    C. Release any Borrower or any guarantor of the Note;
    D. Compromise or settle with the Borrower or any guarantor of the Note;
    E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

Loan No: 1361500742

# SBA GUARANTEE
## (Continued)

Page 2

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

## 5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

## 6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:
   1) Require presentment, protest, or demand upon Borrower;
   2) Redeem any Collateral before or after Lender disposes of it;
   3) Have any disposition of Collateral advertised; and
   4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

   1) Any default under the Note;
   2) Presentment, dishonor, protest, or demand;
   3) Execution of the Note;
   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5) Any change in the financial condition or business operations of Borrower or any guarantor;
   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

   1) Lender failed to obtain any guarantee;
   2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3) Lender or others improperly valued or inspected the Collateral;
   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;
   5) Lender impaired the Collateral;
   6) Lender did not dispose of any of the Collateral;
   7) Lender did not conduct a commercially reasonable sale;
   8) Lender did not obtain the fair market value of the Collateral;
   9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
   10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
   11) Lender made errors or omissions in Loan Documents or administration of the Loan;
   12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
   13) Lender impaired Guarantor's suretyship rights;
   14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
   15) Borrower has avoided liability on the Note; or
   16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

SBA Form 148 (10/98)  Previous editions obsolete

Loan No: 1361500742

# SBA GUARANTEE
(Continued)

Page 3

## 7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

## 8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

## 9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

## 10. STATE-SPECIFIC PROVISIONS:

**None**

Loan No: 1361500742

# SBA GUARANTEE
## (Continued)

Page 4

11. GUARANTOR ACKNOWLEDGEMENT OF TERMS:

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers. THIS UNCONDITIONAL GUARANTEE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS UNCONDITIONAL GUARANTEE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

X _Paulette Sommer_____    (Seal)
Paulette J. Sommerhalter, Individually

Signed, acknowledged and delivered in the presence of:

X _Nancy Stardust_____
Witness

X _____
Witness

*017300000013615007420138151O*

## PREFERRED SHIP MORTGAGE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $650,000.00 | 07-05-2001 | 07-01-2016 | 1361500742 | TNA | BR45BA3 | TRO | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Grantor:** J D J Marine, Incorporation d/b/a Leisure Yacht
Charters (TIN: 13-4168535)
113 Palisade Avenue
Emerson, NJ 07630

**Lender:** Commerce Bank, N.A.
1701 Route 70 East
Cherry Hill, NJ 08034

THIS PREFERRED SHIP MORTGAGE dated July 5, 2001, is made and executed between J D J Marine, Incorporation d/b/a Leisure Yacht Charters ("Grantor") and Commerce Bank, N.A. ("Lender").

**GRANTING OF SECURITY INTEREST.** For valuable consideration, Grantor does by these presents specifically mortgage, grant, convey, pledge, confirm, assign, transfer, set over, and grant a security interest unto and in favor of Lender to secure the Indebtedness and all of Grantor's present and future right, title, and interest in and to the Vessel described herein, including without limitation the Vessel and Rights as described herein.

**COLLATERAL DESCRIPTION.** The word "Collateral" means the Vessel and Rights described below together with the following described property of Grantor, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All log books, manuals, trip records, maintenance records, inspection reports, seaworthiness certificates, and other historical records or information relating to the Vessel.

(B) All accounts, general intangibles, instruments, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.

(C) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section.

(D) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all programming and software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Ship Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated all up to a maximum principal amount outstanding at any one or more times, or from time to time not to exceed U.S. $50,000,000.00, plus all interest, costs, expenses, reasonable attorneys' fees and other fees and charges, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account and whether evidenced by a certificate of deposit). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**REPRESENTATIONS, WARRANTIES, AND OBLIGATIONS CONCERNING THE VESSEL.** Grantor represents, warrants, and covenants to Lender as follows with respect to the Vessel:

Home Port. The home port of the Vessel is and shall at all times be Pier 82, New York Harbor. As long as this Ship Mortgage remains in effect, Grantor shall advise Lender, upon request, of any change in the home port of the Vessel.

Location of Vessel. When not in use elsewhere, the Vessel shall be berthed at: Pier 84, West 43rd Street, New York, NY.

Notice of Mortgage. Grantor shall exhibit and cause a certified copy of this Ship Mortgage and any and all amendments or supplements hereto or assignments hereof, to be exhibited, on demand, to any person having business with the Vessel or with Grantor or with any of Grantor's representatives. Grantor shall further cause the following notice, printed in plain type of such size that each paragraph of reading matter shall cover a space not less than six inches (6") wide by nine inches (9") high, and framed under glass, to be placed and kept prominently displayed on the Vessel:

"NOTICE OF MORTGAGE"

This Vessel is owned by J D J Marine, Incorporation d/b/a Leisure Yacht Charters, and is covered by a Preferred Ship Mortgage in favor of Commerce Bank, N.A., as Mortgagee. Under the terms of said Mortgage, no owner, operator, charterer, cargo owner, subcharterer of this Vessel, or any person, has the right, power or authority to create, incur or permit to exist on this Vessel any lien whatsoever other than liens for crew's wages or salvage.

Grantor agrees that such notice shall be changed whenever necessary to reflect the identity of any successor to Grantor or Lender.

Use of Vessel. Grantor shall use, and shall cause others to use, the Vessel at all times in accordance with the laws, treaties, conventions, rules, regulations and ordinances of the United States of America, the several states and municipalities thereof, and any other sovereign jurisdiction in which the Vessel may be located. The Vessel shall further be used only for any purpose and in the manner set forth in the application for insurance executed in connection therewith, as from time to time in effect, and furthermore, may not be used for any illegal purpose. Grantor shall not, without the prior written consent of Lender, do any act, or voluntarily suffer or permit any act to be done, whereby any insurance required under this Ship Mortgage shall or may be cancelled, suspended, impaired or defeated, or suffer or permit the Vessel to engage in any voyage or to carry any cargo not permitted under the policies of insurance then in effect, without procuring insurance satisfactory to Lender covering the Vessel in all respects for such voyage.

Hazardous Substances. Grantor represents and warrants that the Vessel never has been, and never will be so long as this Ship Mortgage remains a lien on the Vessel, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Vessel for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Ship Mortgage. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Ship Mortgage.

Alterations. Grantor shall not, without the prior written consent of Lender, make or permit others to make, any alterations to the Vessel or any part or component of the Vessel, that may reduce or impair the Vessel's value or utility.

Abandonment of Vessel. Grantor shall not, nor shall Grantor permit others, to abandon, commit waste, or destroy the Vessel, or any part or component of the Vessel.

Repairs and Maintenance. Grantor shall keep and maintain, and cause others to keep and maintain, the Vessel in good order, repair and seaworthy condition to Lender's satisfaction and to the satisfaction of the Vessel's salvage association, classification society and the United States Coast Guard, as applicable. Grantor shall further make and cause all necessary repairs to be made to the Vessel, including the repair and restoration of any portion of the Vessel, or its parts or components, that may have been lost, damaged or impaired.

Inspections; Audits. Lender and Lender's agents may periodically inspect or survey the Vessel to ascertain its condition and to satisfy Lender that the Vessel is being properly repaired and maintained. Lender and Lender's agents may further periodically enter upon Grantor's premises at reasonable hours and conduct audits of Grantor's books and records that in any way pertain to the Vessel, any part or parts thereof, or Grantor's Rights. Lender shall have the further right to periodically inspect the log of the Vessel.

Loan No: 1361500742

## PREFERRED SHIP MORTGAGE
### (Continued)

Page 2

**Prohibitions Regarding the Vessel.** So long as this Ship Mortgage remains in effect, Grantor shall not, without Lender's prior written consent, (1) sell, assign, transfer, convey, option, mortgage, lease or charter the Vessel; (2) permit any Encumbrances to be placed on or attached to the Vessel; (3) change the home port of the Vessel; or (4) register the Vessel under the laws of any foreign nation.

**Preferred Ship Mortgage.** Grantor shall comply with and satisfy all of the provisions of applicable law and regulations of the United States of America, as the same may at any time be amended, including without limitation all laws and regulations relating to citizenship of Grantor, in order to establish and maintain this Ship Mortgage as a first priority "preferred mortgage" upon the Vessel for the full amount secured hereby. Grantor shall also execute and record from time to time, at its expense and at reasonable advance intervals, such additional instruments as may be necessary or appropriate within Lender's sole discretion, so that this Ship Mortgage may be established and preserved as a valid lien on the Vessel until this Ship Mortgage shall be cancelled in the manner provided in this Ship Mortgage.

**VESSEL OWNERSHIP AND TITLE.** Grantor represents, warrants, and covenants to Lender as follows:

**General Representations and Warranties.** Except as previously disclosed to and accepted by Lender in writing: (a) Grantor is and will continue at all times to be the sole lawful owner of the Vessel. (b) Grantor has the right to mortgage the Vessel to Lender; (c) as of the time this Ship Mortgage is recorded, there are no prior Encumbrances affecting the Vessel, or any part or parts thereof; (d) the security interests granted under this Ship Mortgage shall at no time become subordinate or junior to any security interest, lien or claim of any person, firm, corporation or other entity; (e) this Ship Mortgage is binding upon Grantor as well as Grantor's heirs, successors, representatives and assigns, and is legally enforceable in accordance with its terms. The foregoing representations and warranties, and all other representations and warranties contained in this Ship Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as this Ship Mortgage is cancelled in the manner provided herein.

**Prior Encumbrances.** To the extent applicable, Grantor shall fully and timely perform any and all of Grantor's obligations under any prior Encumbrances affecting the Vessel. Without limiting the foregoing, Grantor shall not commit or permit to exist any breach of or default under any such prior Encumbrances. Grantor shall further promptly notify Lender in writing upon the occurrence of any event or circumstances that would, or that might, result in a breach of or default under any such prior Encumbrances. Grantor shall further promptly notify Lender in writing upon the occurrence of any event or circumstances that would, or that might, result in a breach of or default under any such prior Encumbrances. Grantor shall further modify or extend any of the terms of any prior Encumbrances or any indebtedness secured thereby, or request or obtain any additional loans or other extensions of credit from any third party creditor or creditors whenever such additional loan advances or other extensions of credit would be directly or indirectly secured, whether by cross-collateralization or otherwise, by the Vessel, or any part or parts thereof, with possible preference and priority over the lien of this Ship Mortgage.

**Future Encumbrances.** Neither Grantor, nor any charterer, master or operator of the Vessel, shall, without the prior written consent of Lender, grant, or create any Encumbrance, or incur any obligation that may give rise to an Encumbrance (other than for crew's wages or salvage), that may affect the Vessel, or any part or parts thereof, nor shall Grantor, or any charterer, master or operator of the Vessel, permit or consent to any Encumbrance attaching to or being filed against the Vessel, or any part or parts thereof, in favor of anyone other than Lender. Grantor shall further promptly pay when due, or cause to be paid when due, all statements and charges of the master, crew, seamen, mechanics, materialmen, laborers and others incurred in connection with the alteration, improvement, operation, repair, maintenance and salvage of the Vessel, or any part or parts thereof, or otherwise furnish appropriate security or bond so that no Encumbrance may ever attach to or be filed against the Vessel or any of Grantor's rights assigned and pledged under this Ship Mortgage.

**Notice of Encumbrances.** Grantor shall immediately notify Lender in writing upon the filing of any attachment, lien, judicial process, claim or other Encumbrances affecting the Vessel. Grantor additionally agrees to notify Lender immediately in writing, upon the occurrence of any default, or event that, with the passage of time, failure to cure, or giving of notice, might result in a default, under any of Grantor's obligations under any of the Encumbrances securing or any presently existing or future Encumbrance, or that may result in an Encumbrance affecting the Vessel, or any part or parts thereof, or should the Vessel be seized or attached or levied upon, or threatened by seizure or attachment or levy, by any person other than Lender.

**VESSEL INSURANCE REQUIREMENTS AND PROVISIONS.** Grantor represents, warrants, and covenants to Lender as follows with respect to insurance and the Vessel:

**Required Insurance.** So long as this Ship Mortgage remains in effect, Grantor shall keep, at Grantor's sole cost, or cause others at their expense to keep, the Vessel constantly insured as specified below, as well as to keep the Vessel insured against such additional risks as may be commercially reasonable or reasonably specified by Lender from time to time:

(a) Marine (including without limitation navigation and port risks) hull and machinery insurance under the latest forms (determined at the time of issuance of the policies in question) of policies approved by Lender, insuring the Vessel against the usual risks covered by such forms (including, at the option of Grantor, such amounts of increased value and other forms of "total loss only" insurance that are permitted by the hull insurance policies).

(b) While the Vessel may be laid up, at the option of Lender and in lieu of the insurance specified in (a) above, port risk insurance under the usual risks covered by such forms (determined at the time of issuance of the policies in question) of policies approved by Lender insuring the Vessel against the usual risks covered by such forms.

(c) In addition, Lender's interest in the Vessel shall be noted by the Protection and Indemnity Club (where applicable) in which the Vessel may be enrolled.

Grantor shall further keep the Vessel insured against marine protection and indemnity risks and liabilities, and against pollution liability, by policies of insurance approved by Lender as to form and amount.

**Insurance Companies.** Grantor may purchase such insurance through one or more marine insurance brokers of its choice, with such policies being placed and kept with such American, British or other insurance companies, underwriters' associations, clubs or underwriting funds reasonably acceptable to Lender. All such insurance policies, including renewals and replacements, must always be in form, amount and substance acceptable to Lender and must additionally contain a noncontributory lender's loss payable clause in favor of Lender, providing in part that: (a) all proceeds and returned premiums under such policies of insurance will be paid directly to Lender; (b) no act or omission on the part of Grantor or any of its officers, agents, employees or representatives, or the master or crew of the Vessel, or any charterer or subcharterer thereof, or breach of any warranties contained in such policies, shall affect the obligations of the insurer to pay the full amount of any loss to Lender; (c) such policies may not be cancelled or altered without thirty (30) days' prior written notice to Lender of such intended cancellation or alteration; (d) there shall be no recourse against Lender for the payment of premiums or commissions; and (e) if such policies provide for the payment of club calls, assessments or advances, there shall be no recourse against Lender for the payment thereof.

**Insurance Policies.** Grantor agrees to provide Lender with originals or certified copies of such policies of insurance. Grantor further agrees to promptly furnish Lender with copies of all renewal notices and, if requested by Lender, with copies of receipts for paid premiums. Grantor shall provide Lender with originals or certified copies of all renewals or replacement policies of insurance no later than thirty (30) days before any such existing policy or policies should expire.

**Casualties and Accidents.** Grantor agrees to immediately notify Lender in writing of any material casualty to or accident involving the Vessel, whether or not such casualty or loss is covered by insurance. Grantor further agrees promptly to notify Grantor's insurers and to submit an appropriate claim and proof of claim to such insurers in the event that the Vessel, or any part or parts thereof, are lost, damaged, or impaired as a result of an insured hazard. Lender may submit such a claim and proof of claim to the insurer on Grantor's behalf, should Grantor fail to do so promptly (or any reason). Grantor hereby irrevocably appoints Lender as its agent and attorney-in-fact, such agency being coupled with an interest, to make, settle and adjust any and all claims under such policy or policies of insurance and to endorse the name of Grantor on any check or other item of payment for the proceeds thereof; it being understood, however, that unless one or more Events of Default exist under this Ship Mortgage, Lender will not settle or adjust any such claims without the prior approval of Grantor (which approval shall not be unreasonably withheld).

**Insurance Certificates or Opinions.** Grantor will further furnish to Lender, and Lender may rely upon, a certificate or opinion of a firm of marine insurance brokers acting for Grantor with respect to the Vessel, as of the date of this Ship Mortgage, stating in effect, that such insurance policies in all respects to the applicable requirements of this Ship Mortgage. Annually hereafter, Grantor shall further furnish to Lender a detailed certificate or opinion signed by a qualified firm of marine insurance brokers as provided above, as to the insurance maintained by Grantor pursuant to this Ship Mortgage, specifying the respective policies of insurance covering the same, and stating, in effect, that such insurance complies in all respects with the applicable requirements of this Ship Mortgage.

**Insurance Proceeds.** Lender shall have the right to receive directly the proceeds of all insurance protecting the Vessel. In the event that Grantor should receive any such insurance proceeds, Grantor agrees immediately to turn over such proceeds and to pay the same directly to Lender. All insurance proceeds may be applied, at Lender's sole option and discretion, and in such a manner as Lender may determine (after payment of all reasonable costs, expenses and attorneys' fees necessarily paid or incurred by Lender in this connection), whether or not an Event of Default exists under this Ship Mortgage, for the purpose of (a) repairing or replacing any lost, damaged or impaired portions, parts or components of the Vessel, as well as payment of any liabilities, salvage or other charges and expenses (including labor charges paid or payable by Grantor), that may be covered by such policies of insurance; or (b) reducing the then outstanding balance of the indebtedness, with such payments to be applied in the manner provided in this Ship Mortgage. Lender's receipt of such insurance proceeds and the application of such proceeds as provided herein shall not, however, affect the lien of this Ship Mortgage. Nothing under this section shall be deemed to excuse Grantor from Grantor's obligations promptly to repair, replace or restore any lost, damaged or destroyed portion, part or component of the Vessel, whether or not the same may be

Loan No: 1361500742

## PREFERRED SHIP MORTGAGE
### (Continued)

Page 3

covered by insurance, and whether or not such proceeds of insurance are available, and whether such proceeds are sufficient in amount to complete such repair, replacement or restoration to the satisfaction of Lender. Furthermore, unless otherwise confirmed by Lender in writing, the application or release of any insurance proceeds by Lender shall not be deemed to cure or waive any Event of Default under this Ship Mortgage. In the event of an accident or event resulting in a constructive total loss of the Vessel, Lender shall have the right to assert a claim on behalf of Grantor, and if (a) such claim is accepted by all underwriters under the policies then in force, and (b) payment in full thereof is made in cash, then Lender shall have the right to abandon the Vessel to the underwriters, free from the lien of this Ship Mortgage. Lender shall also have the right, in its sole discretion, to enter into any agreement or compromise with regard to the total loss or the constructive total loss of the Vessel.

**TAX REQUIREMENTS AND PROVISIONS.** Grantor represents, warrants, and covenants to Lender as follows with respect to taxes relating to the Vessel and this Ship Mortgage:

**Taxes.** Grantor shall promptly pay, or cause to be paid when due, all taxes, local and special assessments, and governmental and other charges, fines and penalties, of every nature and description, that may from time to time be imposed, assessed and levied against the Vessel or against Grantor. If requested by Lender, Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges, fines and penalties have been paid in full and in a timely manner.

**Imposition of Taxes, Fees, and Charges by Governmental Authorities.** Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Ship Mortgage. The following shall constitute taxes to which this section applies: all intangible personal property taxes, documentary stamp taxes, fees, and other charges for recording or registering this Ship Mortgage; a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the indebtedness secured by this Ship Mortgage; (1) a tax on this type of Ship Mortgage chargeable against Lender or the holder of the Note; and (2) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Ship Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of Lender's available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax in good faith and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**ADDITIONAL ADVANCES FOR SPECIFIC PURPOSES.** Lender shall have the right, within Lender's sole option and discretion, to make Additional Advances on Grantor's behalf for the following purposes:

**Insurance.** If Grantor should for any reason fail to maintain insurance on the Vessel as required under this Ship Mortgage, Lender may make Additional Advances on Grantor's behalf for the purpose of purchasing and maintaining, and Lender may purchase and maintain, such insurance coverage (including insurance protecting only Lender's interests in the Vessel).

**Taxes.** If Grantor should for any reason fail to pay promptly when due taxes, assessments, and governmental and other charges as required under this Ship Mortgage, Lender may make Additional Advances on Grantor's behalf for the purpose of paying such taxes, assessments, and governmental and other charges.

**Repairs.** If Grantor should for any reason fail to make all necessary repairs to the Vessel and to keep the Vessel in good working order and seaworthy condition as required under this Ship Mortgage, Grantor agrees that Lender may make Additional Advances on Grantor's behalf for the purpose of making, and Lender may make, such repairs and maintenance to the Vessel as Lender may deem to be necessary and proper within its sole discretion. Lender and Lender's agents may board the Vessel at any time, and from time to time, for the purpose of accomplishing such repairs and maintenance.

**Encumbrances.** If Grantor should permit or allow any Encumbrance to attach to or be recorded or filed against the Vessel, without having first obtained Lender's prior written consent, or if Grantor should for any reason default under any obligation secured by any presently existing or future Encumbrance, Lender may make Additional Advances on Grantor's behalf and take such other action or actions, as Lender may deem to be necessary and proper within it sole discretion, to pay and fully satisfy such obligation or Encumbrance, to cure or rectify any such default or defaults and to prevent future defaults on Grantor's part.

**Arrest and Seizure of Vessel.** Should the Vessel be arrested or detained by a marshal or other officer of any court of law, equity or admiralty jurisdiction or by any government or other authority, and the Vessel not be released within fifteen (15) days from the date of arrest or detention, Lender is hereby authorized and empowered to apply for and receive and take possession of the Vessel in the name of Grantor. Lender is further authorized and empowered to appear in any court where a suit is pending against Vessel and to take such action as Lender may deem, within it sole discretion, to be necessary or proper to defend any such suit and to obtain the release or discharge of any lien against the Vessel. All funds and expenses expended or incurred by Lender for such purposes shall be considered an Additional Advance as provided under this Ship Mortgage.

**Other Purposes.** Lender may further make Additional Advances on Grantor's behalf and take such other action or actions as Lender may deem to be necessary and proper within Lender's sole discretion, to cure and rectify any actions or inactions on Grantor's part, as are required under this Ship Mortgage, that are not listed immediately above.

**No Obligations.** Nothing under this Ship Mortgage shall obligate Lender to make any such Additional Advances or to take any of the above actions on Grantor's behalf, or as making Lender in any way responsible or liable for any loss, damage or injury to Grantor, or to any other person or persons, resulting from Lender's election not to advance such additional sums or to take such action or actions. In addition, Lender's agreement to make Additional Advances or to take the above actions on Grantor's behalf shall not constitute a waiver or forbearance by Lender of any Event of Default under this Ship Mortgage.

**OBLIGATION TO REPAY ADDITIONAL ADVANCES; INTEREST.** Grantor unconditionally agrees to repay any and all Additional Advances that Lender may elect to make on Grantor's behalf, together with interest as provided herein, immediately upon demand by Lender. Grantor agrees to pay Lender interest on Additional Advances at the rate or rates provided under the Note from the date of each such Additional Advance until all such Additional Advances are repaid in full. Grantor's obligations to repay Additional Advances to Lender, together with interest thereon, shall be secured by this Ship Mortgage up to a maximum amount of two (2) times the face amount of the aforesaid Note.

**ADDITIONAL SECURITY IN RIGHTS.** Grantor further grants a continuing security interest in the following Rights in favor of Lender as additional collateral security for the prompt and punctual payment of the Indebtedness:

**Proceeds.** Any and all proceeds of or with regard to the Vessel, including without limitation any and all proceeds derived or to be derived from the sale, transfer, conveyance, exchange, insurance loss, damage, destruction, condemnation, expropriation or other taking of the Vessel and any unearned insurance premiums relating thereto, as well as any salvage awards and/or recoveries in general average, and all other sums due or to become due with respect to the Vessel, and further including the rights of Grantor to receive such proceeds directly from the obligor or obligors therefor, and to further enforce any rights that Grantor may have to collect such proceeds, including without limitation Grantor's rights to commence an appropriate collection or enforcement action or actions incident thereto.

**Leases, Charters, Rents, and Profits.** Any and all present and future leases or charters affecting the Vessel, including without limitation any and all rents, income, profits, bonuses, revenues, royalties, cash or security deposits, advance rentals and other payments, and further including Grantor's rights to enforce such leases or charters and to receive and enforce any rights that Grantor might have to collect such payments.

**Earnings and Other Revenues.** Any and all freight, hire, earnings, issues, revenues, accounts, assets, payments, income and profits derived or to be derived from the use or operation of the Vessel, or any part or parts thereof, including the rights of Grantor to receive such payments directly from the obligor or obligors thereof, and to further enforce any rights that Grantor collect such payments, including, but not limited to, Grantor's rights to commence an appropriate collection or enforcement action or actions incident thereto.

**Deposits.** Any and all present and future deposits or other security or advance payments, including rental payments made by or on behalf of Grantor to others, with respect to (1) moorage or dockage of the Vessel, (2) cleaning, maintenance, repair or similar services regarding the Vessel, and (3) rentals of equipment, if any, used in the operation by or on behalf of Grantor regarding the Vessel.

**Options.** Any and all present and future options to sell, lease or charter the Vessel or any interest in the Vessel.

**Other Rights.** To the extent assignable and/or transferrable, any and all of Grantor's present and future contract rights, general intangibles, instruments and documents necessary for use or useful in connection with the ownership and operation of the Vessel, whether now existing or hereafter created or otherwise acquired by Grantor, and all liens, security interests, guaranties, remedies, privileges and other rights pertaining thereto, and all rights and remedies of any kind forming the subject matter thereof.

**REPRESENTATIONS AND WARRANTIES CONCERNING RIGHTS.** Grantor represents, warrants and covenants to Lender as follows with respect to the Rights:

**Specific Representations and Warranties.** (1) Grantor is (or with respect to future Rights, will be at the time of acquisition of the future Rights) the sole lawful owner of all the Rights; (2) Grantor has the right to grant a security interest in such Rights in favor of Lender; (3) Grantor has not made any previous assignments or pledges or otherwise encumbered any of Grantor's Rights; (4) to the extent applicable, all of Grantor's Rights that consist of or give rise to obligations of third parties, represent and will at all times continue to represent bona fide obligations of the obligor thereunder, free of any offset, compensation, deduction or counterclaim and (5) the security interest granted hereunder are effective. The

Rights is binding upon Grantor, as well as Grantor's heirs, successors, representatives and assigns, and is legally enforceable in accordance with the foregoing terms and conditions.

**Additional Obligations of Grantor with Regard to the Rights.** Grantor additionally agrees (1) so long as this Ship Mortgage remains in effect, Grantor will not, without the prior written consent of Lender, sell, transfer, assign, pledge, or grant, or create or permit to exist any lien or security interest in or against any of Grantor's Rights, in favor of any person other than Lender; (2) Grantor shall not, without the prior written consent of Lender, compromise, settle, adjust or extend payment under or with regard to any of Grantor's Rights; and (3) Grantor will keep proper books and records with regard to Grantor's business activities and Rights, in accordance with GAAP, applied on a consistent basis throughout, which books and records shall at all reasonable times be open to inspection and copying by Lender or its designated agents. Lender also shall have the right to inspect Grantor's books and records and to discuss Grantor's affairs and finances with Grantor's officers and representatives, at such reasonable times as Lender may designate.

**Notice to Obligors.** Upon request by Lender, Grantor immediately will notify individual obligors under Grantor's Rights, advising such obligors of the fact that their respective agreements and obligations have been assigned and pledged to Lender. In the event that Grantor should fail to provide such notices (or any reason upon Lender's request; Grantor agrees that Lender may forward appropriate notices to such obligors either in Lender's name or in Grantor's name. Lender or Lender's agents also may periodically contact individual obligors to verify the amounts then owing under such obligations, to determine whether such obligors have any offsets or counterclaims against Grantor, and to inquire about such other matters as Lender may deem necessary or desirable.

**Protection of Rights.** Grantor will at all times protect and preserve all of Grantor's Rights.

**Lender's Right to Collect Directly and Receive Proceeds and Payments Before or After Default.** Lender shall have the right, at its sole option and election, at any time, whether or not one or more Events of Default then exist under this Ship Mortgage, to collect directly and receive all proceeds and payments arising under or in any way accruing from the Rights, as such amounts become due and payable. In order to permit the foregoing, Grantor unconditionally agrees to deliver to Lender, immediately following demand, any and all of Grantor's records, ledger sheets and all other documents in the form requested by Lender, with regard to Grantor's Rights and any and all proceeds and payments applicable thereto. Lender shall have the further right, whether or not an Event of Default then exists under this Ship Mortgage, and where appropriate and within Lender's sole discretion, to the full, either in Lender's own name or in the name of Grantor, to collect any and all proceeds and payments that may be due and owing, now or in the future, under or as a result of the Rights. Where it is necessary for Lender to attempt to collect any such proceeds or payments from the obligors or debtors thereto, Lender may compromise, settle, extend or renew for any period (whether or not longer than the original period) any indebtedness thereunder or evidenced thereby, or surrender, release or exchange all or any part of said indebtedness, without affecting the liability of Grantor under this Ship Mortgage or under the Indebtedness. To that end, Grantor hereby irrevocably constitutes and appoints Lender as Grantor's attorney-in-fact, coupled with an interest and with full power of substitution, to take any and all such actions and any and all other actions permitted hereby, either in the name of Grantor or Lender.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Ship Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Ship Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Ship Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Ship Mortgage, the Note, or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Ship Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any vessel securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Ship Mortgage within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Ship Mortgage, at any time thereafter, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Foreclosure on Collateral.** Lender shall have the right, at its sole and exclusive option and discretion, to take any one or more of the following actions to the full extent permitted by applicable law:

(a)  Exercise all the rights and remedies in foreclosure and as otherwise given to mortgagees generally by laws of the United States of America or other applicable provisions of law, including without limitation the laws of any jurisdiction in which the Vessel and other Vessel may then be found;

(b)  Take and enter into possession of the Vessel at any time wherever the same may be located, without legal process and without being responsible for any loss or damage to Grantor or any other third party. Grantor and all other persons then in possession of the Vessel, shall forthwith, upon demand by Lender, surrender possession of the Vessel and Lender may, without being responsible for any loss or damage to Grantor or any other third party, hold, lay up, lease, charter, operate or otherwise use the Vessel for such time and under such terms as Lender may deem to be in its best interest and advantage. Lender may further demand, collect and retain all proceeds, payments and other Rights and any and all other sums due or to become due with respect to the Vessel or with respect to any insurance thereon, from any person whatsoever; provided that the gross amount of all such proceeds or other amounts and sums referred to above (after deducting any costs or expenses of Lender therefrom), received by Lender, shall, promptly upon receipt, be applied in accordance with the provisions of this Ship Mortgage;

(c)  Take and enter into possession of the Vessel at any time, wherever the same may be located, without legal process, and if it seems desirable to Lender and without being responsible for any loss or damage to Grantor or any other third party, sell the Vessel, whether in whole or in component parts, at public or private sale, without survey, at any place and at any such time as Lender may specify, and in such manner as Lender may deem advisable, free from any right of redemption by Grantor in admiralty, in equity, at law, or by statute, after first giving public notice of the time and place of sale with a general description of the mortgaged Vessel. In exercising these rights, Lender may at action to foreclose on its mortgage, and may include in such action an in personam claim against Grantor regardless of Grantor's domicile;

(d)  Exercise any rights, privileges and remedies in foreclosure otherwise given to Lender by any other instrument securing the indebtedness; and

(e)  Any sale of the Vessel and/or its component parts made pursuant to this Ship Mortgage, whether under the power of sale hereby granted or in any judicial proceeding, shall operate to divest Grantor of all rights, title and interest therein, from any and all further bar Grantor and Grantor's successors and assigns, and all other persons claiming by, through or under them, from any and all further rights, claims or interests in or to the Vessel and its components.  The purchaser of the Vessel shall not be bound to inquire whether notice has been given, or whether any Event of Default has occurred, or as to the propriety of the sale, or as to the application of the proceeds of the sale.  In any such sale, Lender may bid for and may purchase the Vessel in the form of competitive bidding or otherwise indebtedness.  Upon compliance with the terms of sale, Lender may hold, retain and dispose of the Vessel without further accountability therefor.  No notice need be given to Grantor by Lender of the private sale or disposal of the Vessel without further accountability applicable law or regulation; Grantor agrees that in such case five (5) days' notice given prior to sale or disposal shall constitute reasonable and satisfactory notice.  If, upon sale, there is a surplus, Lender may, as part of the protection given to the purchaser of the Vessel, pay any or all of the surplus to persons asserting a right in, or lien on, the Vessel, which Lender in good faith believes constitutes a bar to saleability of the Vessel.

**Attorney-In-Fact.**  Lender is hereby irrevocably appointed attorney-in-fact of Grantor, coupled with an interest and with full powers of substitution, to execute and deliver to any purchaser of the Vessel as provided above, and is hereby vested with full power and authority to make, in the name and on behalf of Lender, a good conveyance of the title to the Vessel and/or its component parts sold.  In the event that the sale of the Vessel and/or component parts under any power of sale herein contained, Grantor will, if and when required by Lender, execute such form of conveyance of the Vessel and its component parts as Lender may direct or approve.

**Appointment of Receiver.**  If any legal proceeding shall be taken to enforce any rights under this Ship Mortgage, Lender shall be entitled as a matter of right to the appointment of a receiver of the Vessel and of Grantor's proceeds, payments and other Rights.  Such a receiver shall be entitled to reasonable compensation, which additional compensation shall be secured by this Ship Mortgage in the form of an Additional Advance as provided herein.

**Additional Expenses.**  In the event that it should become necessary for Lender to conduct a search for the Vessel and/or to store such Vessel, Grantor agrees to reimburse Lender for the cost of conducting such a search and/or storing the Vessel, which additional expense shall also be secured by the lien of this Ship Mortgage in the form of an Additional Advance as provided herein.

**Separate Sale of Grantor's Rights Following Default.**  Lender shall have the additional right, at its sole option, separately to sell the Rights or any part or parts thereof, in private or public sale, at such price or prices as Lender may deem best, either for cash or for any other compensation, or on credit, or for future delivery, without the assumption of any credit risk, without any further demand or notice of any kind, all of which are expressly waived by Grantor to the extent permitted under applicable law.  The sale of the Rights may be without appraisement, the benefit of which is also expressly waived by Grantor.  Grantor expressly grants to Lender the full and irrevocable power, coupled with an interest, to sell the Rights, or any part or parts thereof, in the manner herein specified without the intervention of any court and without any formalities other than those provided herein.  For purposes of selling the Rights, Lender is hereby made and constituted the agent of Grantor, such agency being coupled with an interest.

**Automatic Transfer of Rights.**  In the event of foreclosure under this Ship Mortgage or other transfer of title or assignment of the Vessel, or any part or parts thereof, in lieu of payment of the Indebtedness, whether in whole or in part, all policies of insurance and other Rights applicable to the foreclosed upon or transferred Vessel shall automatically inure to the benefit of and shall pass to the purchasers or transferees thereof, subject to the rights of the purchasers or transferees to reject such insurance coverage or Rights at its or their sole option and election.

**Election of Remedies.**  Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Ship Mortgage or by any other writing, shall be cumulative and may be exercised singularly or concurrently.  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Ship Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.  Nothing under this Ship Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Protection of Lender's Security Rights.**  Grantor will be fully responsible for any losses that Lender may suffer as a result of anyone other than Lender asserting any rights or interest in or to the Vessel and/or Grantor's Rights.  Grantor agrees to appear in and to defend all actions or proceedings purporting to affect Lender's security interests in the Vessel and/or Rights.  Grantor agrees to appear in and to defend all actions or powers granted Lender hereunder.  In the event that Grantor fails to do what is required of Grantor under this Ship Mortgage and any of the rights and proceeding is commenced naming Lender as a party or affecting Lender's security interests or the rights and powers granted to Lender under this Ship Mortgage, then Lender may, without releasing Grantor from any of Grantor's obligations under this Ship Mortgage, do whatever Lender believes to be necessary and appropriate within its sole discretion, including making Additional Advances on Grantor's behalf as provided herein, to protect the security of this Mortgage.

**Indemnification of Lender.**  Grantor agrees to indemnify, to defend, and to save Lender harmless from any and all claims, suits, obligations, damages, losses, costs, expenses (including without limitation Lender's attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Lender arising out of or in any manner occasioned by this Ship Mortgage and the exercise of the rights and remedies granted Lender hereunder, and obligation to so indemnify, defend and hold Lender harmless shall be secured by this Ship Mortgage.  The foregoing indemnity provision shall survive the cancellation of this Ship Mortgage as to all matters arising or accruing prior to such cancellation, and the foregoing indemnity provisions shall survive in the event that Lender elects to exercise any of its remedies as provided under this Ship Mortgage following any Event of Default hereunder.

**Execution of Additional Documents.**  Grantor agrees to execute all additional documents, instruments, UCC Financing Statements and other agreements that Lender may deem to be necessary and appropriate, within its sole discretion, in form and substance satisfactory to Lender, to keep this Ship Mortgage in effect, to better reflect the true intent of this Ship Mortgage, and to consummate fully all of the transactions contemplated hereby and by any other Related Document heretofore, now or at any time or times hereafter executed by Grantor and delivered to Lender.

**Duration of Mortgage.**  This Ship Mortgage shall remain in full force and effect until such time as the Indebtedness shall have been paid in full, in principal, interest, costs, expenses, attorneys' fees and other fees and charges.

**Additional Representations and Warranties.**  Grantor further represents, warrants and covenants that:

**Authorization.**  Grantor's execution, delivery, and performance of this Ship Mortgage and all the Related Documents have been duly authorized by all necessary action by Grantor and do not conflict with, result in a violation of, or constitute a default under (a) any provision of Grantor's articles of incorporation or organization, or bylaws, or any agreement or other instrument binding upon Grantor or (b) any law, governmental regulation, court decree, or order applicable to Grantor or to Grantor's properties.

**Perfection of Security Interests.**  Except for the recordation of this Ship Mortgage and the filing of UCC-1 Financing Statements with regard to perfection of the security interest in Grantor's Rights, no other filing or recording is necessary or advisable in any jurisdiction or before or with any governmental or private regulatory body in order to establish and perfect Lender's security interest in the Vessel or Grantor's Rights with respect to Grantor or any of Grantor's present or future creditors or any other third party whatsoever.

**Miscellaneous Provisions.**  The following miscellaneous provisions are a part of this Ship Mortgage:

**Amendments.**  This Ship Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Ship Mortgage.  No alteration of or amendment to this Ship Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.**  Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Ship Mortgage.  Lender may hire or pay someone else to help enforce this Ship Mortgage, and Grantor shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**  Caption headings in this Ship Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Ship Mortgage.

**No Joint Venture or Partnership.**  The relationship of Grantor and Lender created by this Ship Mortgage is strictly that of debtor-creditor, and nothing contained in this Ship Mortgage or in any of the Related Documents

**PREFERRED SHIP MORTGAGE**
(Continued)

Joint venture between Grantor and Lender.

**Applicable Law.** The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law. (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this Ship Mortgage.

**Notices.** Any notice required to be given under this Ship Mortgage shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Ship Mortgage. Any party may change its address for notices under this Ship Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Ship Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Ship Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Ship Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Ship Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Ship Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Ship Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Ship Mortgage shall not affect the legality, validity or enforceability of any other provision of this Ship Mortgage.

**Successors and Assigns.** Subject to any limitations stated in this Ship Mortgage on transfer of Grantor's interest, this Ship Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Vessel becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Ship Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Ship Mortgage or liability under the Indebtedness.

**Definitions.** The following capitalized words and terms shall have the following meanings when used in this Ship Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Ship Mortgage shall have the meanings attributed to such terms in the United States Code and Regulations thereunder dealing with or involving documented vessels, commercial instruments relating to such vessels, and maritime liens and in the Uniform Commercial Code when applicable:

**Additional Advance.** The words "Additional Advance" mean any and all additional sums that Lender may advance on Grantor's behalf as provided under this Ship Mortgage.

**Borrower.** The word "Borrower" means J D J Marine, Incorporation d/b/a Leisure Yacht Charters, and all other persons and entities signing the Note in whatever capacity.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Ship Mortgage.

**Encumbrance.** The word "Encumbrance" means any and all presently existing or future mortgages, liens, privileges and other contractual and statutory security interests and rights, of every nature and kind, whether in admiralty, at law, or in equity, that now and/or in the future may affect the Vessel or any part or parts thereof.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the New Jersey Industrial Site Recovery Act, NJSA Section 13:1K-6 ("ISRA"), the New Jersey Spill Compensation and Control Act, NJSA 58:10-23.11, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Ship Mortgage in the default section of this Ship Mortgage.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means J D J Marine, Incorporation d/b/a Leisure Yacht Charters.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Ship Mortgage or under any of the Related Documents.

**Lender.** The word "Lender" means Commerce Bank, N.A., its successors and assigns.

**Note.** The word "Note" means the Note executed by Grantor in the principal amount of $660,000.00 dated July 5, 2001, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rights.** The word "Rights" means any and all of Grantor's additional rights granted and pledged to Lender as provided under this Ship Mortgage.

**Ship Mortgage.** The words "Ship Mortgage" mean this mortgage as the same may be amended or modified from time to time.

**Vessel.** The word "Vessel" means the following described vessel:

Name: Diplomat Motor Yacht;   Official Number: D229917;   Gross Tonnage: 99;   Net Tonnage: 67;   Year Built: 1930;   Home Port: Pier 84, West 43rd St., NY, NY;   Grantor's Percentage of Interest: 100.000;   Grantor's Interest:

together with any and all present and future engines, boilers, machinery, components, masts, boats, anchors, cables, chains, rigging, tackle, apparel, furniture, capstans, outfit, tools, pumps, gear, furnishings, appliances, fittings, spare and replacement parts, trailers, and any and all other appurtenances thereto, appertaining or belonging to the mortgaged vessels, whether now or hereafter acquired, and whether on board or not on board, together with any and all present and future additions, improvements and replacements thereof, made in or to the vessel, or

Loan No: 1361500742

## PREFERRED SHIP MORTGAGE
### (Continued)

Page 7

any part or parts thereof.

THUS DONE AND SIGNED, on the day, month and year first written above, in the presence of the undersigned competent witnesses, who hereunto sign their names with Grantor after reading of the whole. THIS SHIP MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

J D J MARINE, INCORPORATION D/B/A LEISURE YACHT CHARTERS

By: _____ (Seal)
David E. Sommerhalter, President of J D J Marine,
Incorporation d/b/a Leisure Yacht Charters

ATTEST:

By: _____ (Seal)
Jean J. Turi, Secretary

ATTEST:

_____
Secretary or Assistant Secretary                    ( Corporate Seal )

## CORPORATE ACKNOWLEDGMENT

STATE OF ___NEW JERSEY___
                                                    )
COUNTY OF ___HUNTERDON___                           ) SS
                                                    )

On the ___5th___ day of ___July___ in the year 20 01  before me, the undersigned, a Notary Public in and for said State, personally appeared David E. Sommerhalter, President; Jean Turi, Secretary of J D J Marine, Incorporation d/b/a Leisure Yacht Charters, personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their capacities, and that by their signatures on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.

By _____                My commission expires _____
    Notary Public
Nancy S. Sargent
An Attorney at Law of
New Jersey

NATIONAL VESSEL DOCUMENTATION CENTER
USCG
RECEIVED/FILED

0 9 AUG '01                    1 0 : 0 6 AM

RECORDED:  BOOK_____PAGE_____

DOCUMENTATION OFFICER