```
BLDILO                              BL DISPLAY LOAN
( FWD
SBA FLOAT                                                                    BANK 013
LOAN BAL              45,277.59   001361510111      J.D.J. MARINE INC
INT DUE               3,602.61   CONTRACT DATE   02/24/03
INS DUE                          ADVANCE DATE    02/25/03   LOAN STATUS    ACTIVE
REBATE INS                       MATURITY DATE   02/24/10   PROCESS STAT   NO MAIL
ESCROW AMT                       LAST TRAN DATE  07/03/06   NON-ACCR STAT  MAN NON-ACCR
LATE FEES                  .00   LST MAINT DATE  12/28/05   INTEREST TYPE  SIMPLE RUN-T
LOAN FEES                  .00   LAST PRIN TRAN  01/04/06   INT RATE CODE  VARIABLE SNG
PREPYMT PEN                .00   PRIN PAID TO    09/01/05   RECALC TERMS   NO RECALC
PAYOFF AMT            48,880.20  INT PAID TO     12/06/05   REPYMT METHOD  SUMMARY BILL
PAST DUE             11,303.93   ACCR THRU DATE  07/23/06   REVOLVE CODE   NON-REV MULT
NEXT DUE              1,027.63   PYMTS PAID TO   09/01/05   DAYS PAST DUE  323
LAST PYMT            1,147.67    NEXT PYMT DUE   09/01/05   PYMTS REMAIN   0055
PARTIAL PD                 .00   LAST PYMT DATE  02/06/06   PYMTS PAID     0029
SUBDZ PYMT                 .00   RIGHT TO CURE   00/00/00   PAYBACK INDEX  REPYMT SCHED
LOAN AMT             65,000.00   NEXT RATE CHNG  10/01/06   BOUGHT LOAN    NO
AVAIL CRED                 .00   ACCRUAL BASE    360/360    BANK OWN PCT   015.00000
NON-ACCR                         BRANCH          5404       OFFICER        TRO
MIN EARN             3,602.60    CLASS           1C         EXTENSIONS     000
RES DUE                    .00   COLL CODE                  RENEWALS       000
VARIANCE   PLUS      2.50000     DIRECT/INDIR    DIRECT     ***** TIMES LATE *****
PER DIEM             13.52039    INT RATE        10.75000     05  15  30  60  90 180
                                 NEGATIVE AMORT  NO           36  32  28  17   9   5
```



U.S. Small Business Administration

# NOTE

| SBA Loan # | PLP 600-691-4006 |
|---|---|
| SBA Loan Name | Leisure Yacht Charters |
| Date | February 24, 2003 |
| Loan Amount | 65,000.00 |
| Interest Rate | Variable |
| Borrower | J.D.J. Marine, Inc. dba Leisure Yacht Charters |
| Operating Company | |
| Lender | Commerce Bank, N.A. |

1.  PROMISE TO PAY:

    In return for the Loan, Borrower promises to pay to the order of Lender the amount of

    _____ Sixty-Five Thousand 00/100 _____ Dollars,

    interest on the unpaid principal balance, and all other amounts required by this Note.

2.  DEFINITIONS:

    "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

    "Guarantor" means each person or entity that signs a guarantee of payment of this Note.

    "Loan" means the loan evidenced by this Note.

    "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

    "SBA" means the Small Business Administration, an Agency of the United States of America.

3.  PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

The interest rate on this Note will fluctuate. The initial interest rate is 6.75% per year. This initial rate is the prime rate on the date SBA received the loan application, plus 2.50%. The initial interest rate must remain in effect until the first change period begins. Interest on this note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year.

Borrower must pay principal and interest payments of $973.13 every month, beginning on the 1st day of the month after the 1st full month from date of note; payments must be made on the first calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period").

The "Prime Rate" is the prime rate in effect on the first business day of the month in which an interest rate change occurs, as published in the Wall Street Journal on the next business day.

The adjusted interest rate will be 2.50% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change. The initial interest rate must remain in effect until the first change period begins.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

All remaining principal and accrued interest is due and payable 7 years from date of Note.

Late Charge: If a payment on this Note is more than 15 days late, Lender may charge Borrower a late fee of up to 5% of the unpaid portion of the regularly scheduled payment.

Loan Prepayment:

Notwithstanding any provision in this Note to the contrary:

Borrower may prepay this Note. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

a. Give Lender written notice;
b. Pay all accrued interest; and
c. If the prepayment is received less than 21 days from the date Lender receives
the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

4.  DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.  Fails to do anything required by this Note and other Loan Documents;

B.  Defaults on any other loan with Lender;

C.  Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D.  Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E.  Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F.  Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G.  Fails to pay any taxes when due;

H.  Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I.  Has a receiver or liquidator appointed for any part of their business or property;

J.  Makes an assignment for the benefit of creditors;

K.  Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L.  Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M.  Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.


5.  LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.  Require immediate payment of all amounts owing under this Note;

B.  Collect all amounts owing from any Borrower or Guarantor;

C.  File suit and obtain judgment;

D.  Take possession of any Collateral; or

E.  Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.


6.  LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.  Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B.  Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C.  Release anyone obligated to pay this Note;

D.  Compromise, release, renew, extend or substitute any of the Collateral; and

E.  Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7.    WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8.    SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9.    GENERAL PROVISIONS:

A.    All individuals and entities signing this Note are jointly and severally liable.

B.    Borrower waives all suretyship defenses.

C.    Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D.    Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E.    Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F.    If any part of this Note is unenforceable, all other parts remain in effect.

G.    To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10. STATE-SPECIFIC PROVISIONS:

NONE

11.  BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

BORROWER:

J.D.X Marine, Inc.

By: _____
David Sommerhalter, President

By: _____
Jean Turi, Secretary

Witnessed By: _____



**SBA**

U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP 600-691-4006 |
|---|---|
| SBA Loan Name | Leisure Yacht Charters |
| Guarantor | Jospeh N. Turi |
| Borrower | J. D. J. Marine, Inc. |
| Lender | Commerce Bank, N.A. |
| Date | February 24, 2003 |
| Note Amount | $65,000.00 |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note.  This Guarantee remains in effect until the Note is paid in full.  Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor.  Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated February 24, 2003 in the principal amount of Sixty-five Thousand & 00/100 Dollars, from Borrower to Lender.  It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or for any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;
B. Refrain from taking any action on the Note, the Collateral, or any guarantee;
C. Release any Borrower or any guarantor of the Note;
D. Compromise or settle with the Borrower or any guarantor of the Note;
E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

Loan No: 1361510111

**SBA GUARANTEE**
**(Continued)**

Page 2

   F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

   G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

   H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

**5.  FEDERAL LAW:**

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

**6.  RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

To the extent permitted by law,

   A.  Guarantor waives all rights to:

     1)  Require presentment, protest, or demand upon Borrower;

     2)  Redeem any Collateral before or after Lender disposes of it;

     3)  Have any disposition of Collateral advertised; and

     4)  Require a valuation of Collateral before or after Lender disposes of it.

   B.  Guarantor waives any notice of:

     1)  Any default under the Note;

     2)  Presentment, dishonor, protest, or demand;

     3)  Execution of the Note;

     4)  Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

     5)  Any change in the financial condition or business operations of Borrower or any guarantor;

     6)  Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

     7)  The time or place of any sale or other disposition of Collateral.

   C.  Guarantor waives defenses based upon any claim that:

     1)  Lender failed to obtain any guarantee;

     2)  Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

     3)  Lender or others improperly valued or inspected the Collateral;

     4)  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

     5)  Lender impaired the Collateral;

     6)  Lender did not dispose of any of the Collateral;

     7)  Lender did not conduct a commercially reasonable sale;

     8)  Lender did not obtain the fair market value of the Collateral;

     9)  Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

     10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

     11) Lender made errors or omissions in Loan Documents or administration of the Loan;

     12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

     13) Lender impaired Guarantor's suretyship rights;

     14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

     15) Borrower has avoided liability on the Note; or

     16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

SBA Form 148 (10/98)  Previous editions obsolete

Loan No: 1361510111

## SBA GUARANTEE
### (Continued)

Page 3

7.  DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8.  SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9.  GENERAL PROVISIONS:

A.  ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.  SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C.  SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.  JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E.  DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.  FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G.  LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.  ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.  SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.  CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

Loan No: 1361510111       **SBA GUARANTEE**
**(Continued)**

Page 4

### 11. GUARANTOR ACKNOWLEDGEMENT OF TERMS:

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

THIS UNCONDITIONAL GUARANTEE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS UNCONDITIONAL GUARANTEE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

X _____ (Seal)
    Joseph N. Turi, Individually

Signed, acknowledged and delivered in the presence of:

X _____
    Witness

X _____
    Witness

SBA Form 148 (10/98)  Previous editions obsolete



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP 600-691-4006 |
|---|---|
| SBA Loan Name | Leisure Yacht Charters |
| Guarantor | Jean Turt |
| Borrower | J. D. J. Marine, Inc. |
| Lender | Commerce Bank, N.A. |
| Date | February 24, 2003 |
| Note Amount | $65,000.00 |

### 1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

### 2. NOTE:

The "Note" is the promissory note dated February 24, 2003 in the principal amount of Sixty-five Thousand & 00/100 Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

### 3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or for any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

### 4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;
B. Refrain from taking any action on the Note, the Collateral, or any guarantee;
C. Release any Borrower or any guarantor of the Note;
D. Compromise or settle with the Borrower or any guarantor of the Note;
E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

SBA Form 148 (10/98)  Previous editions obsolete

Loan No: 1361510111                     **SBA GUARANTEE**
                                           **(Continued)**                                Page 2

   F.  Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

   G.  Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

   H.  Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

**5. FEDERAL LAW:**

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

**6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

To the extent permitted by law,

   A.  Guarantor waives all rights to:
      1)  Require presentment, protest, or demand upon Borrower;
      2)  Redeem any Collateral before or after Lender disposes of it;
      3)  Have any disposition of Collateral advertised; and
      4)  Require a valuation of Collateral before or after Lender disposes of it.

   B.  Guarantor waives any notice of:
      1)  Any default under the Note;
      2)  Presentment, dishonor, protest, or demand;
      3)  Execution of the Note;
      4)  Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
      5)  Any change in the financial condition or business operations of Borrower or any guarantor;
      6)  Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
      7)  The time or place of any sale or other disposition of Collateral.

   C.  Guarantor waives defenses based upon any claim that:
      1)  Lender failed to obtain any guarantee;
      2)  Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
      3)  Lender or others improperly valued or inspected the Collateral;
      4)  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;
      5)  Lender impaired the Collateral;
      6)  Lender did not dispose of any of the Collateral;
      7)  Lender did not conduct a commercially reasonable sale;
      8)  Lender did not obtain the fair market value of the Collateral;
      9)  Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
     10)  The financial condition of Borrower or any guarantor was overstated or has adversely changed;
     11)  Lender made errors or omissions in Loan Documents or administration of the Loan;
     12)  Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
     13)  Lender impaired Guarantor's suretyship rights;
     14)  Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
     15)  Borrower has avoided liability on the Note; or
     16)  Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

SBA Form 148 (10/98)  Previous editions obsolete

Loan No: 1361510111

# SBA GUARANTEE
## (Continued)

Page 3

**7. DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

**8. SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

**9. GENERAL PROVISIONS:**

A. **ENFORCEMENT EXPENSES.** Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. **SBA NOT A CO-GUARANTOR.** Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. **SUBROGATION RIGHTS.** Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. **JOINT AND SEVERAL LIABILITY.** All individuals and entities signing as Guarantor are jointly and severally liable.

E. **DOCUMENT SIGNING.** Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. **FINANCIAL STATEMENTS.** Guarantor must give Lender financial statements as Lender requires.

G. **LENDER'S RIGHTS CUMULATIVE, NOT WAIVED.** Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. **ORAL STATEMENTS NOT BINDING.** Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. **SEVERABILITY.** If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. **CONSIDERATION.** The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

**10. STATE-SPECIFIC PROVISIONS:**

SBA Form 148 (10/98)  Previous editions obsolete

Loan No: 1361510111

**SBA GUARANTEE**
**(Continued)**

**11. GUARANTOR ACKNOWLEDGEMENT OF TERMS:**

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

THIS UNCONDITIONAL GUARANTEE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS UNCONDITIONAL GUARANTEE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

X _____ (Seal)
Jean Turi, Individually

Signed, acknowledged and delivered in the presence of:

X _____
Witness

X _____
Witness

SBA Form 148 (10/98)  Previous editions obsolete



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP 600-691-4006 |
|---|---|
| SBA Loan Name | Leisure Yacht Charters |
| Guarantor | David Sommerhalter |
| Borrower | J. D. J. Marine, Inc. |
| Lender | Commerce Bank, N.A. |
| Date | February 24, 2003 |
| Note Amount | $65,000.00 |

1. **GUARANTEE:**

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. **NOTE:**

The "Note" is the promissory note dated February 24, 2003 in the principal amount of Sixty-five Thousand & 00/100 Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. **DEFINITIONS:**

"Collateral" means any property taken as security for payment of the Note or for any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4. **LENDER'S GENERAL POWERS:**

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

    A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

    B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

    C. Release any Borrower or any guarantor of the Note;

    D. Compromise or settle with the Borrower or any guarantor of the Note;

    E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

SBA Form 148 (10/98) Previous editions obsolete

Loan No: 1361510111

**SBA GUARANTEE**
**(Continued)**

   F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

   G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

   H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

### 5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

### 6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

   A. Guarantor waives all rights to:

     1) Require presentment, protest, or demand upon Borrower;

     2) Redeem any Collateral before or after Lender disposes of it;

     3) Have any disposition of Collateral advertised; and

     4) Require a valuation of Collateral before or after Lender disposes of it.

   B. Guarantor waives any notice of:

     1) Any default under the Note;

     2) Presentment, dishonor, protest, or demand;

     3) Execution of the Note;

     4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

     5) Any change in the financial condition or business operations of Borrower or any guarantor;

     6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

     7) The time or place of any sale or other disposition of Collateral.

   C. Guarantor waives defenses based upon any claim that:

     1) Lender failed to obtain any guarantee;

     2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

     3) Lender or others improperly valued or inspected the Collateral;

     4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

     5) Lender impaired the Collateral;

     6) Lender did not dispose of any of the Collateral;

     7) Lender did not conduct a commercially reasonable sale;

     8) Lender did not obtain the fair market value of the Collateral;

     9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

     10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

     11) Lender made errors or omissions in Loan Documents or administration of the Loan;

     12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

     13) Lender impaired Guarantor's suretyship rights;

     14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

     15) Borrower has avoided liability on the Note; or

     16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

SBA Form 148 (10/98)  Previous editions obsolete

Loan No: 1361510111

**SBA GUARANTEE**
**(Continued)**

Page 3

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

SBA Form 148 (10/98) Previous editions obsolete

Loan No: 1361510111

**SBA GUARANTEE**
**(Continued)**

Page 4

**11. GUARANTOR ACKNOWLEDGEMENT OF TERMS:**

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

THIS UNCONDITIONAL GUARANTEE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS UNCONDITIONAL GUARANTEE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

X _____ (Seal)
David Sommerhalter, Individually

Signed, acknowledged and delivered in the presence of:

X _____
Witness

X _____
Witness

SBA Form 148 (10/98)  Previous editions obsolete



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| | |
|---|---|
| SBA Loan # | PLP 500-691-4006 |
| SBA Loan Name | Leisure Yacht Charters |
| Guarantor | Paulette Sommerhalter |
| Borrower | J. D. J. Marine, Inc. |
| Lender | Commerce Bank, N.A. |
| Date | February 24, 2003 |
| Note Amount | $65,000.00 |

1. **GUARANTEE:**

   Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. **NOTE:**

   The "Note" is the promissory note dated February 24, 2003 in the principal amount of Sixty-five Thousand & 00/100 Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. **DEFINITIONS:**

   "Collateral" means any property taken as security for payment of the Note or for any guarantee of the Note.

   "Loan" means the loan evidenced by the Note.

   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

4. **LENDER'S GENERAL POWERS:**

   Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

   A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;
   B. Refrain from taking any action on the Note, the Collateral, or any guarantee;
   C. Release any Borrower or any guarantor of the Note;
   D. Compromise or settle with the Borrower or any guarantor of the Note;
   E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

SBA Form 148 (10/98)  Previous editions obsolete

Loan No: 1361510111

# SBA GUARANTEE
## (Continued)

Page 2

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;
G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and
H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:
   1) Require presentment, protest, or demand upon Borrower;
   2) Redeem any Collateral before or after Lender disposes of it;
   3) Have any disposition of Collateral advertised; and
   4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:
   1) Any default under the Note;
   2) Presentment, dishonor, protest, or demand;
   3) Execution of the Note;
   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5) Any change in the financial condition or business operations of Borrower or any guarantor;
   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:
   1) Lender failed to obtain any guarantee;
   2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3) Lender or others improperly valued or inspected the Collateral;
   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;
   5) Lender impaired the Collateral;
   6) Lender did not dispose of any of the Collateral;
   7) Lender did not conduct a commercially reasonable sale;
   8) Lender did not obtain the fair market value of the Collateral;
   9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
   10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
   11) Lender made errors or omissions in Loan Documents or administration of the Loan;
   12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
   13) Lender impaired Guarantor's suretyship rights;
   14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
   15) Borrower has avoided liability on the Note; or
   16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

Loan No: 1361510111

## SBA GUARANTEE
### (Continued)

Page 3

**7. DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

**8. SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

**9. GENERAL PROVISIONS:**

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

**10. STATE-SPECIFIC PROVISIONS:**

SBA Form 148 (10/98) Previous editions obsolete

Loan No: 1361510111

# SBA GUARANTEE
## (Continued)

Page 4

**11. GUARANTOR ACKNOWLEDGEMENT OF TERMS:**

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

THIS UNCONDITIONAL GUARANTEE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS UNCONDITIONAL GUARANTEE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**GUARANTOR NAME(S) AND SIGNATURE(S):**

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

X _____ (Seal)
    Paulette Sommerhalter, Individually

Signed, acknowledged and delivered in the presence of:

X _____
    Witness

X _____
    Witness

SBA Form 148 (10/98)  Previous editions obsolete

OMB APPROVAL NO.: J245-0201
EXPIRATION DATE 12/31/93

## U.S. Small Business Administration

### SECURITY AGREEMENT

1. J. D. J. Marine, Inc., DBA:

_____ (hereinafter called "Debtor"),
(Name)

113 Palisade Avenue, Emerson, NJ  07630 _____ for value received,
(Address)

hereby grants to  Commerce Bank, N.A.

(Name)

1701 Route 70 East, Cherry Hill, NJ  08034 _____ (hereinafter called
(Address)

"Secured Party"), a security interest in the property described below (hereinafter collectively called "Collateral") to secure the payment of the principal and interest on and all obligations under a note (hereinafter called the "Note"), dated **February 24, 2003,** of the Debtor payable to the order of the Secured Party, in the principal amount of **Sixty-five Thousand & 00/100 Dollars ($65,000.00),** all renewals and extensions of the Note, and all costs, expenses, advances and liabilities which may be made or incurred by Secured Party in the disbursement, administration and collection of the loan evidenced by the Note and in the protection, maintenance and liquidation of the security interest hereby granted with interest at the maximum legal rate on such costs, expenses, advances and liabilities. The note and all other obligations secured hereby are herein collectively called the "Liabilities."

2. The Collateral in which this security interest is granted is all of the Debtor's property described below in reference to which an "X" or checkmark has been placed in the box applicable thereto, together with all the proceeds and products therefrom. If two such boxes are so marked, the security interest so designated secures the purchase money from the loan used by the Debtor to acquire title to the Collateral.

[X] [ ]  a.  All equipment and machinery, including power-driven machinery and equipment, furniture and fixtures now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts and tools belong thereto or for use in connection therewith.

[ ] [ ]  b.  All passenger and commercial motor vehicles registered for use upon public highways or streets, now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts, equipments and tools belonging thereto or for use in connection therewith.

[X] [ ]  c.  All inventory, raw materials, work in process and supplies now owned or hereinafter acquired.

[X] [ ]  d.  All accounts receivable now outstanding or hereafter arising.

[X] [ ]  e.  All contract rights and general intangibles now in force or hereafter acquired.

[X] [ ]  f.  All instruments and chattel paper now owned or hereinafter acquired.

SBA FORM 1059(10-86)REF SOP 70 50          Use 11-85 Edition Until Exhausted          Page 1

3. Debtor shall not transfer, sell or assign Debtor's interest in the Collateral nor permit any other security interest to be created thereon without Secured Party's prior written approval, except that Debtor may sell the inventory listed in Paragraph 2.c. hereof in the ordinary course of business on customary terms and at usual prices and may collect as Secured Party's agent sums due on accounts receivable and contract rights listed in Paragraphs 2.d. and 2.e. until advised otherwise by Secured Party.

4. Debtor shall keep, store or regularly garage all Collateral at locations approved by Secured Party in writing.

5. Debtor shall not conduct business under any other name than that given above nor change or reorganize the type of business entity under which it does business except upon prior written approval of Secured Party. If such approval is given, Debtor guarantees that all documents, instruments and agreements demanded by Secured Party shall be prepared and filed at Debtor's expense before such change of name or business entity occurs.

6. Debtor shall pay the filing and recording costs of any documents or instruments necessary to perfect, extend, modify, or terminate the security interest created hereunder, as demanded by Secured Party.

7. Debtor shall maintain all Collateral in good condition, pay promptly all taxes, judgments, or changes of any kind levied or assessed thereon, keep current all rent due on premises where Collateral is located, and maintain insurance on all Collateral against such hazards, in such amounts and with such companies as Secured Party may demand, all such insurance policies to be in the possession of Secured Party and to contain a Lender's Loss Payable Clause naming Secured Party in a manner satisfactory to Secured Party. Debtor hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon, and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Debtor's name all proofs of loss, drafts, checks and any other documents necessary to accomplish such collections, and any persons or entities making payments to Secured Party under the terms of this Paragraph are hereby relieved absolutely from any obligation to see to the application of any sums so paid.

8. Debtor shall be in default hereunder if Debtor fails to perform any of the liabilities imposed hereby or any other obligation required by the various instruments or papers evidencing or securing this loan, or if the full balance of the loan becomes immediately payable under the terms of such instruments, either automatically or by declaration of the Secured Party. In the event of any default, Secured Party may, in its own discretion, cure such default and, if it does so, any expenditures made for such purpose shall be added to the principal of the Note.

9. In the event of default, Debtor shall assemble and make available all Collateral at any place designated by Secured Party. Debtor acknowledges being advised of a constitutional right to a court notice and hearing to determine whether, upon default, there is probable cause to sustain the validity of the Secured Party's claim and whether the Secured Party is entitled to possession of the Collateral and being so advised, Debtor voluntarily gives up, waives and surrenders any right to a notice and hearing to determine whether there is probable cause to sustain the validity of Secured Party's claim. Any notices required pursuant to any state or local law shall be deemed reasonable if mailed by Secured Party to the persons entitled thereto at their last known addresses at least ten days prior to disposition of the Collateral, and, in reference to a private sale, need state only that Secured Party intends to negotiate such a sale. Disposition of Collateral shall be deemed commercially reasonable if made pursuant to a public offering advertised at least twice in a newspaper of general circulation in the community where the Collateral is located or by a private sale for a sum equal to or in excess of the liquidation value of the Collateral as determined by Secured Party.

10. All rights conferred on Secured Party hereby are in addition to those granted to it by any state or local law or any other law. Failure or repeated failure to enforce any rights hereunder shall not constitute an estoppel or waiver of Secured Party's rights to exercise such rights accruing prior or subsequent thereto. Secured Party shall not be liable for any loss to Collateral in its possession, nor shall such loss diminish the debt due, even if the loss is caused or contributed to by Secured Party's negligence.

11. The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law. (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**FINANCING STATEMENT.** Each Grantor hereby authorizes Lender to file any financing statement covering the Collateral or an amendment that adds collateral covered by the financing statement or an amendment that adds a Grantor to a financing statement, in each case whether or not a Grantor's signature appears thereon. Each Grantor shall execute, and cause any applicable third party to execute, any document that Lender may require in order to obtain Control (as defined in the UCC), over all Deposit Accounts and Investment Property.

**SALE OF COLLATERAL.** Lender shall have no obligation to clean up or prepare the Collateral for sale. If Lender sells any of the Collateral upon credit, Grantor will only be credited with payments actually made by the purchaser that are received by Secured Party and applied to the Obligations. Lender may, in connection with the sale of the Collateral, specifically disclaim any warranties of title or the like.

**COMMERCIAL TRANSACTION.** Borrower acknowledges that the transactions contemplated by this Loan Agreement, the facility established hereby and the use by Borrower of the proceeds of all Loans and other accommodations made on it behalf by Lender are purely commercial in nature. Revised Article 9 contains certain provisions applicable to consumers and consumer transactions. Borrower acknowledges that any consumer oriented provisions in Revised Article 9 are in applicable to this Credit Agreement and the enforcement hereof by Lender of any rights and remedies provided for herein or therein.

**NEW YORK UCC DEFINITION.** "Accounts," "Chattel Paper," "Documents," "Equipment," "Fixtures," "General Intangibles," "Goods," "Instruments," "Inventory," and "Products" shall each have the meaning set forth in the UCC.

"UCC" shall mean the State of New York Uniform Commercial Code, as in effect from time to time.

It is the specific intent of Grantors and Lender that reference to terms defined in the UCC shall mean the definitions set forth in the UCC as in effect from time to time and upon the enactment of Revised Article in the State of New York, the definitions of Revised Article 9 shall apply.

**IN WITNESS WHEREOF,** GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS SECURITY AGREEMENT, AND GRANTOR AGREES TO ITS TERMS. THIS AGREEMENT IS DATED FEBRUARY 24, 2003.

GRANTOR:

J. D. J. MARINE, INC.

By: _____ (Seal)
David . Sommerhalter, President of J. D. J.
Marine Inc.

By: _____ (Seal)
Jean Turi, Secretary of J. D. J. Marine, Inc.





*0150000001361510111013615100*

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $65,000.00 | 02-24-2003 | 02-24-2010 | 1361510111 | 06NA | BBFSBA3 | TRO | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:  J. D. J. Marine, Inc. (TIN: 13-4168535)
113 Palisade Avenue
Emerson, NJ 07630

Lender:  Commerce Bank, N.A.
1701 Route 70 East
Cherry Hill, NJ 08034

---

THIS BUSINESS LOAN AGREEMENT dated February 24, 2003, is made and executed between J. D. J. Marine, Inc. ("Borrower") and Commerce Bank, N.A. ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement ("Loan"). Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

TERM. This Agreement shall be effective as of February 24, 2003, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

CONDITIONS PRECEDENT TO EACH ADVANCE. Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

Loan Documents. Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

Borrower's Authorization. Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

Payment of Fees and Expenses. Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

Representations and Warranties. The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

No Event of Default. There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

REPRESENTATIONS AND WARRANTIES. Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any indebtedness exists:

Organization. Borrower is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of New York. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 113 Palisade Avenue, Emerson, NJ 07630. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

Assumed Business Names. Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business:

| Borrower | Assumed Business Name | Filing Location | Date |
|----------|----------------------|-----------------|------|
| J. D. J. Marine, Inc. | Leisure Yacht Charters | NY | [illegible] |

Authorization. Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of Borrower's articles of incorporation or organization, or bylaws, or any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

Financial Information. Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

Legal Effect. This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

Properties. Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

Hazardous Substances. Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of Borrower's Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

Loan No: 1361510111

# BUSINESS LOAN AGREEMENT
## (Continued)

Page 2

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than one-hundred-twenty (120) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, reviewed by a certified public accountant satisfactory to Lender.

**Tax Returns.** As soon as available, but in no event later than one-hundred-twenty (120) days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property value on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in those guaranties.

| Names of Guarantors | Amounts |
|---|---|
| David Sommerhalter | Unlimited |
| Paulette Sommerhalter | Unlimited |
| Jean Turi | Unlimited |
| Jospeh N. Turi | Unlimited |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for the following specific purposes: $85,000.00 for working capital.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, any presence of any substance, including but not limited to any hazardous waste or substance, on, under, about or from any of the Borrower's property whether owned by Borrower; any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

## BUSINESS LOAN AGREEMENT
### (Continued)

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) pay any dividends on Borrower's stock (other than dividends payable in its stock), provided, however that notwithstanding the foregoing, but only so long as no Event of Default has occurred and is continuing or would result from the payment of dividends, if Borrower is a "Subchapter S Corporation" (as defined in the Internal Revenue Code of 1986, as amended), Borrower may pay cash dividends on its stock to its shareholders from time to time in amounts necessary to enable the shareholders to pay income taxes and make estimated income tax payments to satisfy their liabilities under federal and state law which arise solely from their status as Shareholders of a Subchapter S Corporation because of their ownership of shares of Borrower's stock, or purchase or retire any of Borrower's outstanding shares or alter or amend Borrower's capital structure.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**RIGHT OF SETOFF.** In addition to all liens upon and rights of setoff against Guarantor's money, securities or other property given to Lender by law, Lender shall have, with respect to Guarantor's obligations to Lender under this Note and to the extent permitted by law, a contractual possessory security interest in and a contractual right of setoff against, and Guarantor hereby assigns, conveys, delivers, pledges and transfers to Lender all of Guarantor's right, title and interest in and to, all of Guarantor's deposits, monies, securities and other property now or hereafter in the possession of or on deposit with, or in transit to Lender or any other direct or indirect subsidiary of Commerce Bancorp, Inc. whether held for safekeeping or otherwise, excluding, however, all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to Guarantor. Every such right of setoff shall be deemed to have been exercised immediately upon the occurrence of an Event of Default hereunder without any action of Lender, although Lender may enter such setoff on its books and records at a later time.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Loan.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the dispute, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured (and no Event of Default will have occurred) if Borrower or Grantor, as the case may be, after receiving written notice from Lender demanding cure of such default: (1) cure the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**COMMITMENT LETTER COMPLIANCE.** This loan is contingent upon Borrower's compliance with all of the terms and conditions contained in the

**BUSINESS LOAN AGREEMENT**
(Continued)

commitment letter issued by Lender to Borrower on or about December 30, 2002 upon breach of any term or condition contained therein, Lender shall have the right to declare this loan in default and demand payment in full of the principal balance remaining unpaid, together with all interest which shall have accrued thereon.

**U.S. SMALL BUSINESS ADMINISTRATION CONDITIONS.** The United States Small Business Administration (SBA) has authorized a Guarantee of a loan from Lender to Borrower. In consideration of the promises on this Agreement and for other good and valuable consideration, Borrower and Lender shall comply with all the terms and conditions of the Small Business Authorization issued on January 06, 2003, and SBA's Participating Lender Rules as defined in the Guarantee Agreement between Lender and SBA. Borrower agrees to do everything necessary for Lender to comply with the terms and conditions of said Authorization. Failure to abide by any of the Borrower requirements will constitute an additional event of default under the Note and other loan documents .

**COMMERCIAL TORT CLAIM.** Borrower shall provide written notice to Lender of any Commercial Tort Claim (as defined in the Uniform Commercial Code as in effect from time to time) to which Borrower is or becomes a party or which otherwise inures to the benefit of Borrower. Such notice shall contain a sufficient description of the Commercial Tort Claim including the parties, the court in which the claim is commenced (if applicable), the docket number assigned to the case (if applicable) and a detailed explanation of the events giving rise to such claim. Borrower shall grant Lender a security interest in such Commercial Tort Claim to secure payment of the Indebtedness. Borrower shall execute and deliver such instruments, documents and agreements as Lender may require in order to obtain and perfect such security interest including, without limitation, a security agreement or amendment to any existing security agreement all in form and substance satisfactory to Lender. Borrower authorizes Lender to file (without Borrower's signature), financing statements or amendments to existing financing statements as Lender deems necessary to perfect this security interest.

**NOTICE.** Any request notices for Accounting and Collateral Release must be directed to the Vice President of Loan Servicing at Commerce Bank, N.A. Loan Servicing Center, 2000 Crawford Place, Suite 100, Mt. Laurel NJ 08054.

**AMENDMENT TO THE RIGHT OF SETOFF PROVISION.** The Right of Setoff provision appearing above is Null and Void and is hereby replaced with the following: In addition to all liens upon and rights of setoff against Borrower's money, securities or other property given to Lender by Law, Lender shall have, with respect to Borrower's obligations to Lender under this Note and to the extent permitted by law, a contractual possessory security interest in and a contractual right of setoff against, and Borrower hereby assigns, conveys, delivers, pledges and transfers to Lender all of Borrower's right, title and interest in and to, all of Borrower's deposits, moneys, securities and other property now or hereafter in the possession of or on deposit with, or in transit to Lender or any other direct or indirect subsidiary of Commerce Bancorp, Inc. whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding, however, all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to Borrower. Every such right of setoff shall be deemed to have been exercised immediately upon the occurrence of an Event of Default hereunder without any action of Lender, although Lender may enter such setoff on its books and records at a later time.

**AMENDMENT TO CHANGE IN OWNERSHIP.** The Change in Ownership paragraph above is Null and Void and is hereby replaced with the following: Lender must require Borrower to certify that it will not, without Lender's prior written consent, change the ownership structure or interests in the business during the term of the Loan.

**POST CLOSING COMPLIANCE.** Borrower agrees to execute, re-execute, cause any Guarantor(s) or third party(ies) involved in the loan transaction or any renewal, extension or modification thereof (the "Loan") to execute and or re-execute and to deliver to Lender or its legal counsel, as may be deemed appropriate, any document or instrument signed in connection with the Loan which was incorrectly drafted and/or signed, as well as any document or instrument which should have been signed at or prior to the closing of the Loan, but which was not so signed and delivered. Borrower agrees to comply with any written request by Lender within ten (10) days after receipt by Borrower of such request. Failure by Borrower to so comply shall, at the option of Lender, upon notice to Borrower, constitute an event of default under the Loan.

**LEASES.** All leases pursuant to which Borrower shall lease to third parties portions of any property (ies) pledged as security for the repayment of this loan shall be subject to prior written approval by Lender (i) as to form and content and (ii) as to the identity and financial condition of the lessees.

**RE-APPRAISAL.** In the event that during the term of this loan or any extension thereof, Lender shall deem it necessary to obtain a current appraisal of any property(ies) pledged as security for the repayment of this loan, Lender shall engage the services of an appraiser acceptable to it and Borrower agrees to pay the fee charge by such appraiser in providing the current appraisal.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Applicable Law.** The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law. (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control; penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**No Joint Venture or Partnership.** The relationship of Borrower and Lender created by this Agreement is strictly that of debtor-creditor, and nothing contained in this Agreement or in any of the Related Documents shall be deemed or construed to create a partnership or joint venture between Borrower and Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any

## BUSINESS LOAN AGREEMENT
### (Continued)

circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements contained by or on behalf of Borrower shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means J. D. J. Marine, Inc., and all other persons and entities signing the Note in whatever capacity.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the New Jersey Industrial Site Recovery Act, NJSA Section 13:1K-6 ("ISRA"), the New Jersey Spill Compensation and Control Act, NJSA 58:10-23.11, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Commerce Bank, N.A., its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note executed by J. D. J. Marine, Inc. in the principal amount of $65,000.00 dated February 24, 2005, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

Loan No: 1361510111

**BUSINESS LOAN AGREEMENT**
(Continued)

Page 6

WAIVE JURY. All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED FEBRUARY 24, 2003.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

J. D. J. MARINE, INC.

By: _____ (Seal)
David Sommerhalter, President of J. D. J. Marine, Inc.

By: _____ (Seal)
Jean Turi, Secretary of J. D. J. Marine, Inc.

LENDER:

COMMERCE BANK, N.A.

By: _____ (Seal)
Authorized Signer

LASER PRO Lending, Ver. 5.20.00.04  Copr. Harland Financial Solutions, Inc. 1997, 2003.  All Rights Reserved.  - NJ  p:\CFI\WIN\CFI\LPL\C40.FC  TR-14931  PR-144

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

62106.02    UCC 1 - Financial Statement
Kathleen A. Donovan  Recording Fee 25.00
Bergen County Clerk
Recorded 04/03/2003 11:33

**COPY**

**A. NAME & PHONE OF CONTACT AT FILER** [optional]

**B. SEND ACKNOWLEDGEMENT TO:** (Name and Address)

Commerce Bank, N.A.
2000 Crawford Place Suite 100
Mt. Laurel, NJ 08054

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| J. D. J. Marine, Inc. | | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|
| 113 Palisade Avenue | Emerson | | NJ | 07630 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Corporation | NY | N/A |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names    ☐ NONE

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)    ☐ NONE

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Commerce Bank, N.A. | | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|
| 1701 Route 70 East | Cherry Hill | | NJ | 08034 | |

**4.** This FINANCING STATEMENT covers the following collateral:

All equipment and machinery, including power-driven machinery and equipment, furniture and fixtures now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts and tools belonging thereto or for use in connection therewith.

All inventory, raw materials, work in process and supplies now owned or hereafter acquired.

All accounts receivable now outstanding or hereinafter acquired.

All contract rights and general intangibles now in force or hereinafter acquired.

All instruments and chattel paper now owned or hereinafter acquired.

3·24·03

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum | [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|---|

| 8. OPTIONAL FILER REFERENCE DATA |
|---|
| 1361510111    County Clerk of Bergen, NJ(4404NA) |

ACKNOWLEDGMENT COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

Harland Financial Solutions
400 S.W. 6th Avenue, Portland, Oregon  97204

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME

J. D. J. Marine, Inc.

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 11d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

**12.** ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)    ☐ NONE

12a. ORGANIZATION'S NAME

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☒ fixture filing.

**16.** Additional collateral description:

**14.** Description of real estate:

113 Palisade Avenue, Emerson, Bergen County, NJ 07630

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

David Sommerhalter
113 Palisade Avenue
Emerson, NJ 07630

Paulette Sommerhalter
113 Palisade Avenue
Emerson, NJ 07630

**17.** Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust  or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective for 30 years

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

038522

2003 MAR 31 AM 9:00

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

Commerce Bank, N.A.
2000 Crawford Place Suite 100
Mt. Laurel, NJ 08054

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| J. D. J. Marine, Inc. | | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | | MIDDLE NAME | SUFFIX | |
|---|---|---|---|---|---|
| 113 Palisade Avenue | Emerson | | | | |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | NY | Corporation | NJ   POSTAL CODE 07630   COUNTRY USA | N/A |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | NONE |
|---|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | NONE |
|---|---|---|---|---|---|
| Commerce Bank, N.A. | | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | SUFFIX | |
|---|---|---|---|---|---|
| 1701 Route 70 East | Cherry Hill | NJ | 08034 | | COUNTRY |

4. This FINANCING STATEMENT covers the following collateral:

All equipment and machinery, including power-driven machinery and equipment, furniture and fixtures now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts and tools belonging thereto or for use in connection therewith.

All inventory, raw materials, work in process and supplies now owned or hereafter acquired.

All accounts receivable now outstanding or hereinafter acquired.

All contract rights and general intangibles now in force or hereinafter acquired.

All instruments and chattel paper now owned or hereinafter acquired.

3-24-03

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

6. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum  [if applicable]  7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]   All Debtors   Debtor 1   Debtor 2

8. OPTIONAL FILER REFERENCE DATA
1391510111  State of New York (4404NA)

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

Harland Financial Solutions
Avenue, Portland, Oregon 97204

**FILING NUMBER: 200303310697763**

EXHIBIT "C"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
RLI INSURANCE COMPANY

                      Plaintiff

                                            CASE NO.: 07 CIV 9546

                                            Civil Action

            -vs-


JDJ MARINE, INC. and                        **ANSWER**
COMMERCE BANK, N.A.,

                   Defendants.
----------------------------------x

        The defendant, COMMERCE BANK, N.A., a National Association by

its attorneys, OSTROWITZ & OSTROWITZ, ESQS., as for and for its Answer

to the Complaint of the plaintiff herein, respectfully states and

alleges the following:

        1.  That, the defendant admits the allegations contained in

paragraphs "1", "2", "3", "11" "12", "13", "14", and "37."

        2.  That, the defendant denies the allegations contained in

paragraph "33."

        3.  That, the defendant denies knowledge or information

sufficient to form a belief as to the allegations contained in

paragraphs "4 through and including 10", "15 through and including

-1-

25", "27 through and including 29", "31", "32", "34", "35", "38 through and including 40", and "42 through and including 44."

    4.   That, the defendant repeats and reiterates each and every admission and/or denial heretofore set forth herein in paragraphs "26", "30", and "41."

FIRST AFFIRMATIVE DEFENSE

    1. That, the within action cannot proceed inasmuch as the same fails to join and indispensable party.

SECOND AFFIRMATIVE DEFENSE

    1.   That, the Complaint of the plaintiff fails to state a claim upon which relief can be granted.

    WHEREFORE, the defendant demands Judgment dismissing the Complaint of the plaintiff, together with such other and further relief as, to the Court, may seem just and proper.

Dated:  December 6, 2007

                     OSTROWITZ & OSTROWITZ, ESQS.
                     Attorney for defendant
                     COMMERCE BANK, N.A.

                     /s/ ALAN R. OSTROWITZ (AO 7173)
                     by:  ALAN R. OSTROWITZ
                         A Member of the Firm
                         150 Broadway~Suite 2206
                         New York, New York 1038
                         (212) 509-2800

-2-

```
PLEASE SEND PAPERS TO:
225 Gordons Corner Road
    Suite 1-J
Manalapan, New Jersey 07726
```