# Nicoletti Hornig & Sweeney

JOHN A.V. NICOLETTI
JAMES F. SWEENEY
DAVID R. HORNIG *
FRANK M. MARCIGLIANO
MICHAEL J. CARCICH
BARBARA A. SHEEHAN
NOOSHIN NAMAZI †
THOMAS M. RITTWEGER †
ROBERT A. NOVAK
TERRY L. STOLTZ
MICHAEL F. McGOWAN
VINCENT A. SUBA
SAMUEL C. COLUZZI †

LAWRENCE C. GLYNN †
VAL WAMSER †
KEVIN J.B. O'MALLEY
GUERRIC S.D.L. RUSSELL †
WILLIAM M. FENNELL
MICHAEL J. LARSON ▽
SCOTT D. CLAUSEN †
JANA SPERRY † ◇

* ALSO ADMITTED IN TEXAS
† ALSO ADMITTED IN NEW JERSEY
▽ ALSO ADMITTED IN CONNECTICUT
◇ ALSO ADMITTED IN NORTH CAROLINA

WALL STREET PLAZA
88 PINE STREET
SEVENTH FLOOR
NEW YORK, NY 10005-1801
TELEPHONE  212-220-3830
TELECOPIER  212-220-3780
E-MAIL:  general@nicolettihornig.com
WEBSITE:  www.nicolettihornig.com

MICHAEL MARKS COHEN
LINDA D. LIN

OF COUNSEL

NEW JERSEY OFFICE:

401 CONTINENTAL PLAZA
HACKENSACK, NEW JERSEY 07601
TELEPHONE  201-343-0970
TELECOPIER  201-343-5882

January 2, 2008

**VIA TELEFAX 718-984-5820**
**VIA FIRST-CLASS MAIL**

Fricke & Solomon
622 Barlow Avenue
Staten Island, New York 10312

Attention:     Richard M. Fricke, Esq.

**VIA TELEFAX (732) 446-5837**
**VIA FIRST-CLASS MAIL**

Ostrowitz & Ostrowitz, Esqs.
225 Gordons Corner Road, Suite 1-J
Manalapan, New Jersey 07726

Attention:     Alan R. Ostrowitz, Esq.

RE:     RLI Insurance Company vs. JDJ Marine, Inc.
        Case No.:     07-cv-09546-GBD (JBD)(HP)
        Our File:     70000202 JAVN/NN/GSR

Gentlemen:

Attached please find a copy of RLI Insurance Company's Amended Complaint which was filed with the Court today, January 2, 2008.

January 2, 2008
Page 2


We thank you for your attention to this matter.

Very truly yours,

NICOLETTI HORNIG & SWEENEY

By:

Nooshin Namazi

NN/mm
Enclosures

X:\Public Word Files\7\202\COUNSEL LTR.1.2.08.mm.doc

UNITED STATES DISTRICT COURT`
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
RLI INSURANCE COMPANY,                                          07 Civ. 9546 (JBD)(HP)

                              Plaintiff,

                                                               **AMENDED COMPLAINT**

            -against-

JDJ MARINE, INC.

                              Defendant.
-----------------------------------------------------X

            Plaintiff, RLI Insurance Company, by its attorneys, Nicoletti Hornig &
Sweeney, as and for a complaint against the defendant JDJ Marine, Inc., alleges upon
information and belief as follows:

## JURISDICTION

            1.    This action is filed under and pursuant to the Federal Declaratory
Judgment Act, 28 U.S.C. §2201.

            2.    The following issues constitute questions of insurance coverage under an
Admiralty or Maritime contract of insurance and thereby come within the Admiralty and
Maritime jurisdiction of the United States District Court, pursuant to Title 28 U.S.C. §1333 et
seq., and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within
the Admiralty and Maritime jurisdiction of the United States and of this Honorable Court.

            3.    An actual controversy of a justiciable nature exists between plaintiff and
defendant involving the rights and obligations under a marine contract of insurance and
depending on the construction of said contract, the aforesaid controversy can be determined by
a judgment of this Court, without further suit.

**PARTIES**

4.    At all times relevant, plaintiff RLI Insurance Company ("RLI"), was and is an insurance company duly organized under and existing by virtue of the laws of the State of Illinois with a principal place of business at 9025 N. Lindbergh Drive, Peoria, Illinois 61615 and with an office and place of business at 1384 Broadway, 21st Floor, New York, New York 10018.

5.    At all times relevant, defendant JDJ Marine, Inc. ("JDJ"), was and is a corporation or other business entity duly organized under and existing by virtue of, or otherwise licensed or authorized to do business under the laws of one of the states of the United States of America with an office and place of business at 113 Pallisade Avenue, Emerson, New Jersey 07630.

6.    At all times relevant, defendant JDJ was and is the owner and operator of the excursion vessel DIPLOMAT ("M/V DIPLOMAT").

7.    At all times relevant, Frenkel & Co., Inc. ("Frenkel") was and is a corporation or other business entity duly organized under and existing by virtue of the laws of the State of New York and duly licensed to conduct business as an insurance broker in the State of New York with an office and place of business at 1740 Broadway, 5th Floor, New York, New York 10019.  Frenkel is not a party to this action.

8.    At all times relevant, Frenkel was and is engaged in the business of brokering marine insurance and was and is the broker for defendant JDJ with regard to the marine policy issued by plaintiff RLI herein for the M/V DIPLOMAT.

9.    At all times relevant, Frenkel was and is the agent of defendant JDJ.

2

## THE HULL POLICY

10.    On or before May 15, 2007, Frenkel, on behalf of defendant JDJ, made application in New York to plaintiff RLI for hull and protection and indemnity insurance on the M/V DIPLOMAT.

11.    Pursuant to and in reliance upon the application by Frenkel for defendant JDJ, RLI, on or about May 15, 2007, agreed to and bound Policy No. HUL0100185, which provided, among other things, hull and protection and indemnity insurance for the M/V DIPLOMAT, subject to the policy's terms and conditions, with a policy period from May 15, 2007, 12:01 a.m. Standard Time at place of issuance to May 15, 2008, 12:01 a.m. Standard Time at place of issuance. A true and complete copy of Policy No. HUL01000185 is attached hereto and incorporated herein as Exhibit "A".

12.    Defendant JDJ is a named insured pursuant to the terms of Policy No. HUL0100185.

13.    In and by the terms of Policy No. HUL0100185, with respect to hull coverage for the M/V DIPLOMAT, it was provided in pertinent part:

### AMERICAN INSTITUTE HULL CLAUSES

* * *

**ASSURED**

This Policy insures JDJ Marine, Inc. hereinafter referred to as the Assured.

* * *

**VESSEL**

The Subject Matter of this insurance is the Vessel called the [DIPLOMAT] or by whatsoever name or names the said Vessel is or shall be called, which for purposes of this insurance shall consist of

3

and be limited to her hull, launches, lifeboats, rafts, furniture, bunkers, stores, supplies, tackle, fittings, equipment, apparatus, machinery, boilers, refrigerating machinery, insulation, motor generators and other electrical machinery.

\* \* \*

## AGREED VALUE

The Vessel, for so much as concerns the Assured, by agreement between the Assured and the Underwriters in this Policy, is and shall be valued at 500,000 Dollars.

## AMOUNT INSURED HEREUNDER

500,000 Dollars.

\* \* \*

## PERILS

Touching the Adventures and Perils which the Underwriters are contented to bear and take upon themselves, they are of the Seas, Men-of-War, Fire, Lightning, Earthquake, Enemies, Pirates, Rovers, Assailing Thieves, Jettisons, Letters of Mart and Counter-Mart, Surprisals, Takings at Sea, Arrests, Restraints and Detainments of all Kings, Princes and Peoples, of what nation, condition or quality soever, Barratry of the Master and Mariners and of all other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the Vessel, or any part thereof, excepting, however, such of the foregoing perils as may be excluded by provisions elsewhere in the Policy or by endorsement thereon.

\* \* \*

## TOTAL LOSS

In ascertaining whether the Vessel is a constructive Total Loss the Agreed Value shall be taken as the repaired value and nothing in respect of the damaged or break-up value of the Vessel or wreck shall be taken into account.

There shall be no recovery for a constructive Total Loss hereunder unless the expense of recovering and repairing the Vessel would exceed the Agreed Value.   In making this determination, only

4

expenses incurred or to be incurred by reason of a single accident or a sequence of damages arising from the same accident shall be taken into account, but expenses incurred prior to tender of abandonment shall not be considered if such are to be claimed separately under the Sue and Labor clause.

In the event of Total Loss (actual or constructive), no claim to be made by the Underwriters for freight, whether notice of abandonment has been given or not.

In no case shall the Underwriters be liable for unrepaired damage in addition to a subsequent Total Loss sustained during the period covered by this Policy.

## SUE AND LABOR

And in case of any Loss or Misfortune, it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the Vessel, or any part thereof, without prejudice to this insurance, to the charges whereof the Underwriters will contribute their proportion as provided below. And it is expressly declared and agreed that no acts of the Underwriters or Assured in recovering, saving or preserving the Vessel shall be considered as a waiver or acceptance of abandonment.

In the event of expenditure under the Sue and Labor clause, the Underwriters shall pay the proportion of such expenses that the amount insured hereunder bears to the Agreed Value, or that the amount insured hereunder (less loss and/or damage payable under this Policy) bears to the actual value of the salved property, whichever proportion shall be less; provided always that their liability for such expenses shall not exceed their proportionate part of the Agreed Value.

If claim for Total Loss is admitted under this Policy and sue and labor expenses have been reasonably incurred in excess of any proceeds realized or value recovered, the amount payable under this Policy will be the proportion of such excess that the amount insured hereunder (without deduction for loss or damage) bears to the Agreed Value or to the sound value of the Vessel at the time of the accident, whichever value was greater; provided always that Underwriters' liability for such expenses shall not exceed their proportionate part of the Agreed Value. The foregoing shall also apply to expenses reasonably incurred in salving or attempting to

salve the Vessel and other property to the extent that such expenses shall be regarded as having been incurred in respect of the Vessel.

<div align="center">* * *</div>

## CHANGE OF OWNERSHIP

In the event of any change, voluntary or otherwise, in the ownership or flag of the Vessel, or if the Vessel be placed under new management, or be chartered on a bareboat basis or requisitioned on that basis, or if the Classification Society of the Vessel or her class therein be changed, cancelled or withdrawn, then, unless the Underwriters agree thereto in writing, this Policy shall automatically terminate at the time of such change of ownership, flag, management, charter, requisition or classification; provided, however, that:

1.    If the Vessel has cargo on board and has already sailed from her loading port, or is at sea in ballast, such automatic termination shall, if required, be deferred until arrival at final port of discharge if with cargo, or at port of destination if in ballast;

2.    In the event of an involuntary temporary transfer by requisition or otherwise, without the prior execution of a written agreement by the Assured, such automatic termination shall occur fifteen (15) days after such transfer.

This insurance shall not inure to the benefit of any transferee or charterer of the Vessel and, if a loss payable hereunder should occur between the time of change or transfer and any deferred automatic termination, the Underwriters shall be subrogated to all of the rights of the Assured against the transferee or charterer in respect of all or part of such loss as is recoverable from the transferee or charterer, and in the proportion which the amount insured hereunder bears to the Agreed Value.

The term "new management" as used above refers only to the transfer of the management of the Vessel from one firm of corporation to another, and it shall not apply to any internal changes within the offices of the Assured.

14.    In and by the terms of Policy No. HUL0100185, it was also provided in pertinent part:

**TOTAL LOSS ONLY ENDORSEMENT**

This policy shall provide Total Loss Only coverage. Hull deductible applicable for General Average, Salvage and Sue & Labor

**FINAL JUDGMENT AND ORDER OF ARREST**
**OF VESSEL AND POSSESSION OF COLLATERAL**

15.    On or about October 10, 2006, Commerce Bank, N.A. ("Commerce") commenced an action in the District Court for the Southern District of New York (Docket No. 06 civ. 8301) against JDJ and the M/V DIPLOMAT, among others, to recover certain defaulted debts which remained due and outstanding in the amount of $805,242.32. Among the collateral involved in that action was a Preferred Ship Mortgage on the M/V DIPLOMAT.

16.    By Order dated April 20, 2007, the Hon. Gerard E. Lynch entered a Final Judgment and Order of Arrest of Vessel and Possession of Collateral. A true and complete copy of the same is attached hereto and incorporated herein as Exhibit "B". Pursuant to this Order, JDJ was foreclosed of any and all right, title and/or interest in the M/V DIPLOMAT. Furthermore, Commerce was entitled to arrest and seize the vessel.

17.    Neither JDJ nor Frankel, its agent, advised RLI during the insurance application process of (1) the aforementioned suit filed by Commerce; or (2) the Final Judgment and Order of Arrest of Vessel and Possession entered by the Hon. Gerard E. Lynch on April 20, 2007. Both of these facts were known by JDJ and/or Frankel during the insurance application process and prior to RLI's issuance of Policy No. HUL0100185 on May 15, 2007.

18.    Had RLI been made aware of either of these facts, which are material to RLI's assessment of the risks insured, RLI would not have agreed to issue Policy No. HUL0100185.

7

19. Upon information and belief, Commerce took ownership and/or possession of the M/V DIPLOMAT pursuant to the Final Judgment and Order of Arrest of Vessel and Possession of Collateral dated April 20, 2007, prior to the RLI's issuance of Policy No. HUL0100185 and/or the date of the loss which is the subject of this action.

## BACKGROUND FACTS REGARDING CLAIM

20. At all relevant times, the M/V DIPLOMAT was docked at the Lincoln Harbor Marina, Weehawken, New Jersey.

21. On or about July 2, 2007, while the M/V DIPLOMAT was docked at her marina, it was discovered that the engine room and/or compartments in the aft of the vessel had become partially flooded.

22. The source of the ingress of the water has not been located or determined.

23. At all times immediately prior to the discovery of the ingress of water into the M/V DIPLOMAT and throughout the time of her partial flooding, the vessel was at all times tied to a dock and the weather and sea conditions were calm.

24. As a result of the water found in the M/V DIPLOMAT on or about July 2, 2007, defendant JDJ made a claim under Policy No. HUL0100185.

25. In support of its claim, defendant JDJ submitted to RLI an estimate dated August 8, 2007 from Master Marine Services which calculated total repair and replacement costs related to the water ingress to be $106,152.04.

26. Since the partial flooding was discovered on or about July 2, 2007, defendant JDJ has made no efforts pursuant to the terms of Policy No. HUL0100185 to Sue and Labor the damage to the areas, machinery, engines and other vessel components which were exposed to the water ingress.

8

27.   As a result of further alleged damage sustained by the M/V DIPLOMAT which was solely caused by defendant JDJ's failure to Sue and Labor pursuant to the terms of Policy No. HUL0100185, defendant JDJ submitted a revised estimate from Master Marine Services, which purportedly calculated total repair and replacement costs to be $524,405.57.

28.   Defendant JDJ now claims the vessel to be a constructive total loss based upon the revised estimate from Master Marine Services.

29.   Plaintiff RLI disputes the defendant's allegation that the cost of recovery and repair exceeds the insured value and therefore disputes that the vessel is a total loss, constructive or otherwise.

30.   By this action, RLI declines defendant JDJ's claims for the damages sustained by the M/V DIPLOMAT based on the presently known facts and law for the reasons stated herein.

### AS AND FOR A FIRST CAUSE OF ACTION

31.   RLI repeats and realleges each and every allegation set forth in paragraphs "1" through "30" inclusive of this Amended Complaint with the same force and effect as if more fully set forth herein.

32.   The alleged damages to the M/V DIPLOMAT as a result of the water found in her on or about July 2, 2007, were not caused by, and/or did not arise out of, an insured event under Policy No. HUL0100185.

33.   The alleged damages to the M/V DIPLOMAT as a result of the water found in her on or about July 2, 2007, were not caused by, and/or did not arise out of, a fortuitous event.

9

34. By virtue of the foregoing premises, RLI is not liable under Policy No. HUL0100185 with respect to JDJ's claim for the total loss of the M/V DIPLOMAT.

### AS AND FOR A SECOND CAUSE OF ACTION

35. RLI repeats and realleges each and every allegation set forth in paragraphs "1" through "34", inclusive of this Amended Complaint with the same force and effect as if more fully set forth herein.

36. The M/V DIPLOMAT sank at her dock in calm weather and sea conditions.

37. Under the law, when a vessel sinks in calm weather, a presumption exists that the vessel was unseaworthy and that the cause of the sinking was the unseaworthiness of the vessel.

38. The M/V DIPLOMAT was unseaworthy at the time she sank and her sinking was the result of such unseaworthiness.

39. Therefore, the sinking of the M/V DIPLOMAT was not caused by, and/or did not arise out of, a fortuitous event.

40. By virtue of the foregoing premises, RLI is not liable under Policy No. HUL0100185 with respect to JDJ's claims for the total loss of the M/V DIPLOMAT.

### AS AND FOR A THIRD CAUSE OF ACTION

41. RLI repeats and realleges each and every allegation set forth in paragraphs "1" through "40" inclusive of this Amended Complaint with the same force and effect as if more fully set forth herein.

42. Policy No. HUL0100185 provides coverage for the hull of the M/V DIPLOMAT, subject to all of the policies terms and conditions, on a Total Loss basis only.

43.    Defendant JDJ has failed to make any showing whatsoever that the M/V DIPLOMAT sustained an actual and/or constructive total loss, as required under the terms of Policy No. HUL0100185, when the engine room and/or aft compartments of the vessel were partially flooded.

44.    Defendant JDJ has failed to make any showing whatsoever that the expense of recovering and repairing the M/V DIPLOMAT as a result of the partial flooding sustained on or about July 2, 2007, would exceed the Agreed Value of $500,000.00.

45.    By virtue of the foregoing premises, RLI is not liable under Policy No. HUL0100185 with respect to JDJ's claim for the total loss of the M/V DIPLOMAT as a result of her partial flooding on or about July 2, 2007.

### AS AND FOR A FOURTH CAUSE OF ACTION

46.    RLI repeats and realleges each and every allegation set forth in paragraphs "1" through "45" inclusive of this Amended Complaint with the same force and effect as if more fully set forth herein.

47.    JDJ's and/or Frankel's failure to disclose to RLI during the insurance application process that (1) Commerce had filed suit against JDJ and the M/V DIPLOMAT for outstanding debts; and/or (2) the Hon. Gerard E. Lynch had entered a Final Judgment and Order of Arrest of Vessel and Possession of Collateral on April 20, 2007, violated the doctrine of uberrimae fidei, which renders the policy void ab initio, and therefore RLI is not liable for any claims under the policy for the loss sustained by the M/V DIPLOMAT on or about July 2, 2007.

11

48.    Since Policy No. HUL0100185 is null and void <u>ab</u> <u>initio</u> and no coverage under the policy came into effect, RLI will tender to JDJ a return of premium for the hull and protection and indemnity coverage under the subject policy.

<div align="center">

**AS AND FOR A FIFTH CAUSE OF ACTION**

</div>

49.    RLI repeats and realleges each and every allegation set forth in paragraphs "1" through "48" inclusive of this Amended Complaint with the same force and effect as if more fully set forth herein.

50.    Pursuant to the Final Judgment and Order of Arrest of Vessel and Possession of Collateral entered by the Hon. Gerard E. Lynch on April 20, 2007, JDJ did not have an insurable interest in the M/V DIPLOMAT at the time RLI issued Policy No. HUL0100185 on May 15, 2007.

51.    JDJ's lack of insurable interest renders the policy void <u>ab</u> <u>initio</u>, and therefore RLI is not liable for any claims under the policy for the loss sustain by the M/V DIPLOMAT on or about July 2, 2007.

52.    Since Policy No. HUL0100185 is null and void <u>ab</u> <u>initio</u> and no coverage under the policy came into effect, RLI will tender to JDJ a return of premium for the hull and protection and indemnity coverage under the subject policy.

<div align="center">

**AS AND FOR A SIXTH CAUSE OF ACTION**

</div>

53.    RLI repeats and realleges each and every allegation set forth in paragraphs "1" through "52" inclusive of this Amended Complaint with the same force and effect as if more fully set forth herein.

<div align="center">

12

</div>

54.    Pursuant to the Final Judgment and Order of Arrest of Vessel and Possession of Collateral entered by the Hon. Gerard E. Lynch on April 20, 2007, Commerce took ownership of M/V DIPLOMAT prior to the loss which is the subject of this action.

55.    Upon this change of ownership, Policy No. HUL0100185 was terminated as set forth by the policy's terms and conditions, and therefore RLI is not liable for any loss sustained by the M/V DIPLOMAT on or about July 2, 2007.

56.    Since Policy No. HUL0100185 was terminated prior to the loss, RLI hereby tenders to JDJ a return of premium for the hull and protection and indemnity coverage under the subject policy in an amount to be determined by the Court from the date that Commerce obtained ownership of the M/V DIPLOMAT.

### AS AND FOR A SEVENTH CAUSE OF ACTION

57.    RLI repeats and realleges each and every allegation set forth in paragraphs "1" through "56", inclusive of this Amended Complaint with the same force and effect as if more fully set forth herein.

58.    Since the partial flooding was discovered on or about July 2, 2007, defendant JDJ has made no efforts pursuant to the terms of Policy No. HUL0100185 to Sue and Labor the damage to the areas, machinery, engines and other vessel components which were exposed to the water ingress.

59.    If the vessel is either an actual and/or constructive total loss under the terms of Policy No. HUL0100185, which is denied, it is solely the result of defendant JDJ's failure to Sue and Labor pursuant to the terms of Policy No. HUL0100185 the areas of the vessel affected by the ingress of water.

60. By virtue of the foregoing premises, RLI is not liable under Policy No. HUL0100185 with respect to JDJ's claims for the total loss of the M/V DIPLOMAT.

WHEREFORE, plaintiff RLI Insurance Company prays for judgment against defendant JDJ Marine, Inc. as follows:

A.    in favor of plaintiff and against defendant on the First Cause of Action for judgment declaring that there is no coverage under Policy No. HUL0100185 for the alleged damages to the vessel M/V DIPLOMAT by reason that the alleged losses did not result from a fortuitous event;

B.    in favor of plaintiff and against defendant on the Second Cause of Action for judgment declaring that there is no coverage under Policy No. HUL0100185 for the alleged damages to the vessel M/V DIPLOMAT by reason that the M/V DIPLOMAT was unseaworthy at the time of the sinking;

C.    in favor of plaintiff and against defendant on the Third Cause of Action for judgment declaring that there is no coverage under Policy No. HUL0100185 for the alleged damages to the vessel M/V DIPLOMAT by reason that the defendant cannot sustain its burden of proving that the vessel sustained either an actual or constructive total loss covered under the Policy;

D.    in favor of plaintiff and against defendant on the Fourth Cause of Action for judgment declaring that there is no coverage under Policy No. HUL0100185 for the alleged damages to the vessel M/V DIPLOMAT

by reason that the defendant violated the doctrine of <u>uberrimae</u> <u>fidei</u> which renders Policy No. HUL0100185 void <u>ab</u> <u>initio</u>;

E.    in favor of plaintiff and against defendant on the Fifth Cause of Action for judgment declaring that there is no coverage under Policy No. HUL0100185 for the alleged damages to the vessel M/V DIPLOMAT by reason that the defendant did not have an insurable interest in vessel at the inception of the policy which renders Policy No. HUL0100185 void <u>ab</u> <u>initio</u>;

F.    in favor of plaintiff and against defendant on the Sixth Cause of Action for judgment declaring that there is no coverage under Policy No. HUL0100185 for the alleged damages to the vessel M/V DIPLOMAT by reason that the policy terminated when there was a change of ownership in the M/V DIPLOMAT to Commerce Bank, N.A.;

G.    in favor of plaintiff and against defendant on the Seventh Cause of Action for judgment declaring that there is no coverage under Policy No. HUL0100185 for the alleged damages to the vessel M/V DIPLOMAT because defendant failed to comply with and/or breached its obligations under the Sue and Labor provision of the Policy; and

H.    in favor of plaintiff for such other and further relief that this Court may deem just and proper, together with costs and disbursements of this action.

Dated:    New York, New York
          January 2, 2008

                              NICOLETTI HORNIG & SWEENEY
                              *Attorneys for Plaintiff*
                              *RLI INSURANCE COMPANY*

                    By:    _John A. V. Nicolett_
                           John A. V. Nicoletti (JN-7174)
                           Wall Street Plaza
                           88 Pine Street, 7th Floor
                           New York, New York 10005-1801
                           Tel: (212) 220-3830
                           Fax: (212) 220-3780
                           E-mail: jnicoletti@nicolettihornig.com
                           (FILE NO.:  70000202 JAVN/NN/GSR)


TO:

Fricke & Solomon
*Attorneys for Defendant*
*JDJ MARINE, INC.*
Richard M. Fricke (RF-7486)
622 Barlow Avenue
Staten Island, New York 10312
Tel:      (718) 984-2626
Fax:      (718) 984-5820
E-mail:  rfricke@metrolaw.com


Ostrowitz & Ostrowitz, Esqs.
*Attorneys for COMMERCE BANK, N.A.*
Alan R. Ostrowitz (AO-7173)
150 Broadway, Suite 2206
New York, New York 10038
Tel:      (212) 509-2800
Fax:      (732) 446-5837
E-mail:  ostrow.law@verizon.net

Requested papers to be sent to:
225 Gordons Corner Road, Suite 1-J
Manalapan, New Jersey 07726

X:\Public Word Files\7202\Legal\AMENDED COMPLAINT.1.2.08.mm.doc

# EXHIBIT "A"



**RLI Insurance Company**

9025 N. Lindbergh Drive • Peoria, IL 61615 • (309) 692-1000

# MARINE POLICY DECLARATIONS

Policy Number: HUL0100185

Renewal of:

Producer:

49029    Frenkel & Co, Inc.
1740 Broadway, 5th Fl
New York, NY 10019-0000

**"NAMED INSURED" AND ADDRESS**

JDJ Marine, Inc.
113 Pallisade Avenue
Emerson, NJ 07630

**POLICY PERIOD** From  5/15/2007   To  5/15/2008   at 12:01 A.M. Standard Time at your mailing address shown above.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage Part | See Form | 100% Premium/Deposit |
|---|---|---|
| Hull | OMH 101 (04/05) | $7,500 |
| Protection & Indemnity | OMH 102 (04/05) | $19,550 |
| Terrorism | OMP 2221 (02/03) | $100 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| | Surcharge: |
|---|---|
| Premium of   $27,150   payable at inception | Total Premium: $27,150 |
| | Minimum Earned Premium: N/A |

**ADDITIONAL FORMS AND ENDORSEMENTS – MADE PART OF THIS POLICY AT TIME OF ISSUE**

See Attached Schedule of Endorsements (OMP 2150)

Authorized Signature

 **RLI Insurance Company**
9025 North Lindbergh Drive, Peoria, IL 61615

## SUPPLEMENTAL DECLARATIONS

Policy No: HUL0100185

Named Insured and Mailing Address

JDJ Marine, Inc.
113 Pallisade Avenue
Emerson, NJ 07630

If coverage for Certified Acts of Terrorism, as defined in the Terrorism Risk Insurance Act of 2002, is provided under the terms of your insurance policy, losses caused by acts of terrorism is partially reimbursed by the United States under a formula whereby the United States pays 90% of covered terrorism losses from 2006 and 85% of such losses from 2007 exceeding a prescribed deductible to the insurance company providing for the coverage.

Portion of premium attributable to coverage for Certified Acts of Terrorism                     $ 100

Portion of premium attributable to coverage for Certified Acts of Terrorism
(fire only),  as required by law                                                                                           $ 0

With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

INSURED

OMP 110A (01/06)

Policy Number: HUL0100185

RLI Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# APPLICABLE FORMS & ENDORSEMENTS

FORMS AND ENDORSEMENTS LISTED BELOW APPLY TO AND ARE MADE PART OF THIS POLICY AT TIME OF ISSUE.

| | |
|---|---|
| OMP 609 (08/05) | Absolute Punitive Exclusion |
| OMP 632 (08/05) | Chemical, Biological, Bio-Chemical & Electromagnetic Excl. Clause |
| OMP 2257 (01/06) | Conditional Terrorism Exclusion |
| OMH 650 (04/05) | Diving Exclusion |
| OMP 614 (08/05) | Extended Radioactive Contamination Exclusion Clause w/USA Endt. |
| OMH 647 (04/05) | Navigation Warranty |
| OMP 608 (08/05) | Oil Pollution Clause 1990 |
| OMH 628 (04/05) | Pollution Exclusion Clause (Liabilities)(24-A) |
| JLF 0001 (01/01) | Signature Page |
| OMP 110A (01/06) | Terrorism- Supplemental Declaration |
| OMP 2230 (05/03) | Terrorism Exclusion |
| OMP 630 (08/05) | U.S. Economic & Trade Sanctions Clause |
| OMP 112 (10/06) | Vessel Schedule (Hull & PI) |
| MAN-NYC-1219 (05/07) | Total Loss Only Endorsement |
| MAN-NYC-1220 (05/07) | Lay-Up Warranty |

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

OMP 2150 (05/05)

INSURED

Policy Number: HUL0100185                                              RLI Insurance Company

# AMERICAN INSTITUTE HULL CLAUSES

The terms and conditions of the following clauses are to be regarded as substituted for those of the policy form to which they are attached, the latter being hereby waived, except provisions required by law to be inserted in the Policy. All captions are inserted only for purposes of reference and shall not be used to interpret the clauses to which they apply.

## ASSURED

This Policy insures _____JDJ Marine, Inc._____ hereinafter referred to as the Assured.

If claim is made under this Policy by anyone other than the Owner of the Vessel, such person shall not be entitled to recover to a greater extent than would the Owner, had claim been made by the Owner as an Assured named in this Policy.

Underwriters waive any right of subrogation against affiliated, subsidiary or interrelated companies of the Assured, provided that such waiver shall not apply in the event of a collision between the Vessel and any vessel owned, demise chartered or otherwise controlled by any of the aforesaid companies, or with respect to any loss, damage or expense against which such companies are insured.

## LOSS PAYEE

Loss, if any, payable to _____Assured_____ or order.

Provided, however, Underwriters shall pay claims to others as set forth in the Collision Liability clause and may make direct payment to persons providing security for the release of the Vessel in Salvage cases.

## VESSEL

The Subject Matter of this insurance is the Vessel called the _____See Vessel Schedule OMP 112____ or by whatsoever name or names the said Vessel is or shall be called, which for purposes of this insurance shall consist of and be limited to her hull, launches, lifeboats, rafts, furniture, bunkers, stores, supplies, tackle, fittings, equipment, apparatus, machinery, boilers, refrigerating machinery, insulation, motor generators and other electrical machinery.

In the event any equipment or apparatus not owned by the Assured is installed for use on board the Vessel and the Assured has assumed responsibility therefore, it shall also be considered part of the Subject Matter and the aggregate value thereof shall be included in the Agreed Value.

Notwithstanding the foregoing, cargo containers, barges and lighters shall not be considered a part of the Subject Matter of this insurance.

## DURATION OF RISK

From the _15th_ day of _May___, _2007_, _12:01 A.M Local Standard___ time
to the __15th__ day of _May___, _2008_, _12:01 A.M Local Standard___ time.

Should the Vessel at the expiration of this Policy be at sea, or in distress, or at a port of refuge or of call, she shall, provided previous notice be given to the Underwriters, be held covered at a pro rata monthly premium to her port of destination.

In the event of payment by the Underwriters for Total Loss of the Vessel this Policy shall thereupon automatically terminate.

## AGREED VALUE

The Vessel, for so much as concerns the Assured, by agreement between the Assured and the Underwriters in this Policy, is and shall be valued at _____ 500,000 _____ Dollars.

## AMOUNT INSURED HEREUNDER

_____ 500,000 _____ Dollars.

## DEDUCTIBLE

Notwithstanding anything in this Policy to the contrary, there shall be deducted from the aggregate of all claims (including claims under the Sue and Labor clause and claims under the Collision Liability clause) arising out of each separate accident, the sum of $ 10,000 _____ , unless the accident results in a Total Loss of the Vessel in which case this clause shall not apply. A recovery from other interests, however, shall not operate to exclude claims under this Policy provided the aggregate of such claims arising out of one separate accident if unreduced by such recovery exceeds that sum. For the purpose of this clause each accident shall be treated separately, but it is agreed that **(a)** a sequence of damages arising from the same accident shall be treated as due to that accident and **(b)** all heavy weather damage, or damage caused by contact with floating ice, which occurs during a single sea passage between two successive ports shall be treated as though due to one accident.

## PREMIUM

The Underwriters to be paid in consideration of this insurance_____ Seven Thousand Five Hundred ($7,500) _____ Dollars being at the annual rate of ____ OMP 112 ___ percent, which premium shall be due on attachment. If the Vessel is insured under this Policy for a period of less than one (1) year at pro rata of the annual rate, full annual premium shall be considered earned and immediately due and payable in the event of Total Loss of the Vessel.

## RETURNS OF PREMIUM

Premium returnable as follows:

Pro rata daily net in the event of termination under the Change of Ownership clause;

Pro rata monthly net for each uncommenced month if it be mutually agreed to cancel this Policy;

For each period of thirty (30) consecutive days the Vessel may be laid up in port for account of the Assured,

___TBA___ cents percent net not under repair, or

___TBA___ cents percent net under repair;

Provided always that:

1. A Total Loss of the Vessel has not occurred during the currency of this Policy;

2. In no case shall a return for lay-up be allowed when the Vessel is lying in exposed or unprotected waters or in any location not approved by the Underwriters;

3. In the event of any amendment of the annual rate, the above rates of return shall be adjusted accordingly;

4. In no case shall a return be allowed when the Vessel is used as a storage ship or for lighting purposes.

If the Vessel is laid up for a period of thirty (30) consecutive days, a part only of which attaches under this Policy, the Underwriters shall pay such proportion of the return due in respect of a full period of thirty (30) days as the number of days attaching hereto bears to thirty (30). Should the lay-up period exceed thirty (30) consecutive days, the Assured shall have the option to elect the period of thirty (30) consecutive days for which a return is recoverable.

## NONPAYMENT OF PREMIUM

In event of nonpayment of premium thirty (30) days after attachment, or of any additional premium when due, this Policy may be cancelled by the Underwriters upon ten (10) days written or telegraphic notice sent to the Assured at his last known address or in care of the broker who negotiated this Policy. Such proportion of the premium, however, as shall have been earned up to the time of cancellation shall be payable. In the event of Total Loss of the Vessel occurring prior to any cancellation or termination of this Policy full annual premium shall be considered earned.

OMH 101 (04/05)

## ADVENTURE

Beginning the adventure upon the Vessel, as above, and so shall continue and endure during the period aforesaid, as employment may offer, in port or at sea, in docks and graving docks, and on ways, gridirons and pontoons, at all times, in all places, and on all occasions, services and trades; with leave to sail or navigate with or without pilots, to go on trial trips and to assist and tow vessels or craft in distress, but the Vessel may not be towed, except as is customary or when in need of assistance, nor shall the Vessel render assistance or undertake towage or salvage services under contract previously arranged by the Assured, the Owners, the Managers or the Charterers of the Vessel, nor shall the Vessel, in the course of trading operations, engage in loading or discharging cargo at sea, from or into another vessel other than a barge, lighter or similar craft used principally in harbors or inland waters. The phrase "engage in loading or discharging cargo at sea" shall include while approaching, leaving or alongside, or while another vessel is approaching, leaving or alongside the Vessel.

The Vessel is held covered in case of any breach of conditions as to cargo, trade, locality, towage or salvage activities, or date of sailing, or loading or discharging cargo at sea, provided **(a)** notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and **(b)** any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured.

## PERILS

Touching the Adventures and Perils which the Underwriters are contented to bear and take upon themselves, they are of the Seas, Men-of-War, Fire, Lightning, Earthquake, Enemies, Pirates, Rovers, Assailing Thieves, Jettisons, Letters of Mart and Counter-Mart, Surprisals, Takings at Sea, Arrests, Restraints and Detainments of all Kings, Princes and Peoples, of what nation, condition or quality soever, Barratry of the Master and Mariners and of all other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the Vessel, or any part thereof, excepting, however, such of the foregoing perils as may be excluded by provisions elsewhere in the Policy or by endorsement thereon.

## ADDITIONAL PERILS (INCHMAREE)

Subject to the conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by the following:

1. Accidents in loading, discharging or handling cargo, or in bunkering;

2. Accidents in going on or off, or while on drydocks, graving docks, ways, gridirons or pontoons;

3. Explosions on shipboard or elsewhere;

4. Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any latent defect in the machinery or hull, (excluding the cost and expense of replacing or repairing the defective part);

5. Breakdown of or accidents to nuclear installations or reactors not on board the insured Vessel;

6. Contact with aircraft, rockets or similar missiles, or with any land conveyance;

7. Negligence of Charterers and/or Repairers, provided such Charterers and/or Repairers are not an Assured hereunder;

8. Negligence of Masters, Officers, Crew or Pilots;

Provided such loss or damage has not resulted from want of due diligence by the Assured, the Owners or Managers of the Vessel, or any of them. Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of this clause should they hold shares in the Vessel.

## DELIBERATE DAMAGE (POLLUTION HAZARD)

Subject to the conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard, or threat thereof, resulting directly from damage to the Vessel for which the Underwriters are liable under this Policy, provided such act of governmental authorities has not resulted from want of due diligence by the Assured, the Owners, or Managers of the Vessel or any of them to prevent or mitigate such hazard or threat. Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of this clause should they hold shares in the Vessel.

## CLAIMS (GENERAL PROVISIONS)

In the event of any accident or occurrence which could give rise to a claim under this Policy, prompt notice thereof shall be given to the Underwriters, and:

1.  Where practicable, the Underwriters shall be advised prior to survey, so that they may appoint their own surveyor, if they so desire;

2.  The Underwriters shall be entitled to decide where the Vessel shall proceed for docking and/or repair (allowance to be made to the Assured for the actual additional expense of the voyage arising from compliance with the Underwriters' requirement);

3.  The Underwriters shall have the right of veto in connection with any repair firm proposed;

4.  The Underwriters may take tenders, or may require in writing that tenders be taken for the repair of the Vessel, in which event, upon acceptance of a tender with the approval of the Underwriters, an allowance shall be made at the rate of thirty (30) percent per annum on the amount insured, for each day or pro rata for part of a day, for time lost between the issuance of invitations to tender and the acceptance of a tender, to the extent that such time is lost solely as the result of tenders having been taken and provided the tender is accepted without delay after receipt of the Underwriters' approval.

Due credit shall be given against the allowances in 2. and 4. above for any amount recovered:

1.  In respect of fuel, stores, and wages and maintenance of the Master, Officers or Crew allowed in General or Particular Average;

2.  From third parties in respect of damages for detention and/or loss of profit and/or running expenses;

For the period covered by the allowances or any part thereof.

No claim shall be allowed in Particular Average for wages and maintenance of the Master, Officers or Crew, except when incurred solely for the necessary removal of the Vessel from one port to another for average repairs or for trial trips to test average repairs, in which cases wages and maintenance will be allowed only while the Vessel is under way. This exclusion shall not apply to overtime or similar extraordinary payments to the Master, Officers or Crew incurred in shifting the Vessel for tank cleaning or repairs or while specifically engaged in these activities, either in port or at sea.

General and Particular Average shall be payable without deduction, new for old.

The expense of sighting the bottom after stranding shall be paid, if reasonably incurred especially for that purpose, even if no damage be found.

No claim shall in any case be allowed in respect of scraping or painting the Vessel's bottom.

In the event of loss or damage to equipment or apparatus not owned by the Assured but installed for use on board the Vessel and for which the Assured has assumed responsibility, claim shall not exceed (a) the amount the Underwriters would pay if the Assured were owner of such equipment or apparatus, or (b) the contractual responsibility assumed by the Assured to the owners or lessors thereof, whichever shall be less.

No claim for unrepaired damages shall be allowed, except to the extent that the aggregate damage caused by perils insured against during the period of the Policy and left unrepaired at the expiration of the Policy shall be demonstrated by the Assured to have diminished the actual market value of the Vessel on that date if undamaged by such perils.

## GENERAL AVERAGE AND SALVAGE

General Average and Salvage shall be payable as provided in the contract of affreightment, or failing such provision or there be no contract of affreightment, payable at the Assured's election either in accordance with York-Antwerp Rules 1950 or 1974 or with the Laws and Usages of the Port of New York. Provided always that when an adjustment according to the laws and usages of the port of destination is properly demanded by the owners of the cargo, General Average shall be paid accordingly.

In the event of salvage, towage or other assistance being rendered to the Vessel by any vessel belonging in part or in whole to the same Owners or Charterers, the value of such services (without regard to the common ownership or control of the vessels) shall be ascertained by arbitration in the manner provided for under the Collision Liability clause in this Policy, and the amount so awarded so far as applicable to the interest hereby insured shall constitute a charge under this Policy.

When the contributory value of the Vessel is greater than the Agreed Value herein, the liability of the Underwriters for General Average contribution (except in respect to amounts made good to the Vessel), or Salvage, shall not exceed that proportion of the total contribution due from the Vessel which the amount insured hereunder bears to the contributory value, and if, because of damage for which the Underwriters are liable as Particular Average, the value of the Vessel has been reduced for the purpose of contribution, the amount of such Particular Average damage recoverable under this Policy shall first be deducted from the amount insured hereunder, and the Underwriters shall then be liable only for the proportion which such net amount bears to the contributory value.

## TOTAL LOSS

In ascertaining whether the Vessel is a constructive Total Loss the Agreed Value shall be taken as the repaired value and nothing in respect of the damaged or break-up value of the Vessel or wreck shall be taken into account.

There shall be no recovery for a constructive Total Loss hereunder unless the expense of recovering and repairing the Vessel would exceed the Agreed Value. In making this determination, only expenses incurred or to be incurred by reason of a single accident or a sequence of damages arising from the same accident shall be taken into account, but expenses incurred prior to tender of abandonment shall not be considered if such are to be claimed separately under the Sue and Labor clause.

In the event of Total Loss (actual or constructive), no claim to be made by the Underwriters for freight, whether notice of abandonment has been given or not.

In no case shall the Underwriters be liable for unrepaired damage in addition to a subsequent Total Loss sustained during the period covered by this Policy.

## SUE AND LABOR

And in case of any Loss or Misfortune, it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the Vessel, or any part thereof, without prejudice to this insurance, to the charges whereof the Underwriters will contribute their proportion as provided below. And it is expressly declared and agreed that no acts of the Underwriters or Assured in recovering, saving or preserving the Vessel shall be considered as a waiver or acceptance of abandonment.

In the event of expenditure under the Sue and Labor clause, the Underwriters shall pay the proportion of such expenses that the amount insured hereunder bears to the Agreed Value, or that the amount insured hereunder (less loss and/or damage payable under this Policy) bears to the actual value of the salved property, whichever proportion shall be less; provided always that their liability for such expenses shall not exceed their proportionate part of the Agreed Value.

If claim for Total Loss is admitted under this Policy and sue and labor expenses have been reasonably incurred in excess of any proceeds realized or value recovered, the amount payable under this Policy will be the proportion of such excess that the amount insured hereunder (without deduction for loss or damage) bears to the Agreed Value or to the sound value of the Vessel at the time of the accident, whichever value was greater; provided always that Underwriters' liability for such expenses shall not exceed their proportionate part of the Agreed Value. The foregoing shall also apply to expenses reasonably incurred in salving or attempting to salve the Vessel and other property to the extent that such expenses shall be regarded as having been incurred in respect of the Vessel.

## COLLISION LIABILITY

And it is further agreed that:

1.  If the Vessel shall come into collision with any other ship or vessel, and the Assured or the Surety in consequence of the Vessel being at fault shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in respect of such collision, the Underwriters will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as their respective subscriptions hereto bear to the Agreed Value, provided always that their liability in respect to any one such collision shall not exceed their proportionate part of the Agreed Value;

2.  In cases where, with the consent in writing of a majority (in amount) of Hull Underwriters, the liability of the Vessel has been contested, or proceedings have been taken to limit liability, the Underwriters will also pay a like proportion of the costs which the Assured shall thereby incur or be compelled to pay.

When both vessels are to blame, then, unless the liability of the owners or charterers of one or both such vessels becomes limited by law, claims under the Collision Liability clause shall be settled on the principle of Cross-Liabilities as if the owners or charterers of each vessel had been compelled to pay to the owners or charterers of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured in consequence of such collision.

The principles involved in this clause shall apply to the case where both vessels are the property, in part or in whole, of the same owners or charterers, all questions of responsibility and amount of liability as between the two vessels being left to the decision of a single Arbitrator, if the parties can agree upon a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the Assured and one to be appointed by the majority (in amount) of Hull Underwriters interested; the two Arbitrators chosen to choose a third Arbitrator before entering upon the reference, and the decision of such single Arbitrator, or of any two of such three Arbitrators, appointed as above, to be final and binding.

Provided always that this clause shall in no case extend to any sum which the Assured or the Surety may become liable to pay or shall pay in consequence of, or with respect to:

1.  Removal or disposal of obstructions, wrecks or their cargoes under statutory powers or otherwise pursuant to law;

2.  Injury to real or personal property of every description;

3.  The discharge, spillage, emission or leakage of oil, petroleum products, chemicals or other substances of any kind or description whatsoever;

4.  Cargo or other property on or the engagements of the Vessel;

5.  Loss of life, personal injury or illness.

Provided further that exclusions 2. and 3. above shall not apply to injury to other vessels or property thereon except to the extent that such injury arises out of any action taken to avoid, minimize or remove any discharge, spillage, emission or leakage described in 3. above.

## PILOTAGE AND TOWAGE

This insurance shall not be prejudiced by reason of any contract limiting in whole or in part the liability of pilots, tugs, towboats, or their owners when the Assured or the agent of the Assured accepts such contract in accordance with established local practice.

Where in accordance with such practice, pilotage or towage services are provided under contracts requiring the Assured or the agent of the Assured:

1.  To assume liability for damage resulting from collision of the Vessel insured with any other ship or vessel, including the towing vessel, or

2.  To indemnify those providing the pilotage or towage services against loss or liability for any such damages,

it is agreed that amounts paid by the Assured or Surety pursuant to such assumed obligations shall be deemed payments "by way of damages to any other person or persons" and to have been paid "in consequence of the Vessel being at fault" within the meaning of the Collision Liability clause in this Policy to the extent that such payments would have been covered if the Vessel had been legally responsible in the absence of any agreement. Provided always that in no event shall the aggregate amount of liability of the Underwriters under the Collision Liability clause, including this clause, be greater than the amount of any statutory limitation of liability to which owners are entitled or would be entitled if liability under any contractual obligation referred to in this clause were included among the liabilities subject to such statutory limitations.

## CHANGE OF OWNERSHIP

In the event of any change, voluntary or otherwise, in the ownership or flag of the Vessel, or if the Vessel be placed under new management, or be chartered on a bareboat basis or requisitioned on that basis, or if the Classification Society of the Vessel or her class therein be changed, cancelled or withdrawn, then, unless the Underwriters agree thereto in writing, this Policy shall automatically terminate at the time of such change of ownership, flag, management, charter, requisition or classification; provided, however, that:

1.  If the Vessel has cargo on board and has already sailed from her loading port, or is at sea in ballast, such automatic termination shall, if required, be deferred until arrival at final port of discharge if with cargo, or at port of destination if in ballast;

2.  In the event of an involuntary temporary transfer by requisition or otherwise, without the prior execution of a written agreement by the Assured, such automatic termination shall occur fifteen (15) days after such transfer.

This insurance shall not inure to the benefit of any transferee or charterer of the Vessel and, if a loss payable hereunder should occur between the time of change or transfer and any deferred automatic termination, the Underwriters shall be subrogated to all of the rights of the Assured against the transferee or charterer in respect of all or part of such loss as is recoverable from the transferee or charterer, and in the proportion which the amount insured hereunder bears to the Agreed Value.

The term "new management" as used above refers only to the transfer of the management of the Vessel from one firm of corporation to another, and it shall not apply to any internal changes within the offices of the Assured.

## ADDITIONAL INSURANCES

It is a condition of this Policy that no additional insurance against the risk of Total Loss of the Vessel shall be effected to operate during the currency of this Policy by or for account of the Assured, Owners, Managers, Operators or Mortgagees except on the interests and up to the amounts enumerated in the following Sections 1. to 7. inclusive, and no such insurance shall be subject to P.P.I., F.I.A. or other like term on any interests whatever excepting those enumerated in Section 1.; provided always and notwithstanding the limitation on recovery in the Assured clause a breach of this condition shall not afford the Underwriters any defense to a claim by a Mortgagee who has accepted this Policy without knowledge of such breach:

1.  DISBURSEMENTS, MANAGERS' COMMISSIONS, PROFITS OR EXCESS OR INCREASED VALUE OF HULL AND MACHINERY, AND/OR SIMILAR INTERESTS HOWEVER DESCRIBED, AND FREIGHT (INCLUDING CHARTERED FREIGHT OR ANTICIPATED FREIGHT) INSURED FOR TIME. An amount not exceeding in the aggregate twenty-five percent (25%) of the Agreed Value.

2.  FREIGHT OR HIRE, UNDER CONTRACTS FOR VOYAGE. An amount not exceeding the gross freight or hire for the current cargo passage and next succeeding cargo passage (such insurance to include, if required, a preliminary and an intermediate ballast passage) plus the charges of insurance. In the case of a voyage charter where payment is made on a time basis, the amount shall be calculated on the estimated duration of the voyage, subject to the limitation of two cargo passages as laid down herein. Any amount permitted under this Section shall be reduced, as the freight or hire is earned, by the gross amount so earned. Any freight or hire to be earned under the form of Charters described in 4. below shall not be permitted under this Section 2. if any part thereof is insured as permitted under said Section 4.

3.  ANTICIPATED FREIGHT IF THE VESSEL SAILS IN BALLAST AND NOT UNDER CHARTER. An amount not exceeding the anticipated gross freight on next cargo passage, such amount to be reasonably estimated on the basis of the current rate of freight at time of insurance, plus the charges of insurance. Provided, however, that no insurance shall be permitted by this Section if any insurance is effected as permitted under Section 2.

4.  TIME CHARTER HIRE OR CHARTER HIRE FOR SERIES OF VOYAGES. An amount not exceeding fifty percent (50%) of the gross hire which is to be earned under the charter in a period not exceeding eighteen (18) months. Any amount permitted under this Section shall be reduced as the hire is earned under the charter by fifty percent (50%) of the gross amount so earned but, where the charter is for a period exceeding eighteen (18) months, the amount insured need not be reduced while it does not exceed fifty percent (50%) of the gross hire still to be earned under the charter. An insurance permitted by this Section may begin on the signing of the charter.

5.  PREMIUMS. An amount not exceeding the actual premiums of all interest insured for a period not exceeding twelve (12) months (excluding premiums insured as permitted under the foregoing Sections but including, if required, the premium or estimated calls on any Protection and Indemnity or War Risks and Strikes insurance) reducing pro rata monthly.

6.  RETURNS OF PREMIUM. An amount not exceeding the actual returns which are recoverable subject to "and arrival" or equivalent provision under any policy of insurance.

7.  INSURANCE IRRESPECTIVE OF AMOUNT AGAINST. Risks excluded by War, Strikes and Related Exclusions clause; risks enumerated in the American Institute War Risks and Strikes Clauses; and General Average and Salvage Disbursements.

## WAR STRIKES AND RELATED EXCLUSIONS

The following conditions shall be paramount and shall supersede and nullify any contrary provisions of the Policy.

This Policy does not cover any loss, damage or expense caused by, resulting from, or incurred as a consequence of:

1.  Capture, seizure, arrest, restraint or detainment, or any attempt thereat; or

2.  Any taking of the Vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; or

3.  Any mine, bomb or torpedo not carried as cargo on board the Vessel; or

4.  Any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter; or

5.  Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy; or

6.  Strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military or usurped power; or

7.  Malicious acts or vandalism, unless committed by the Master or Mariners and not excluded elsewhere under this War Strikes and Related Exclusions clause; or

8.  Hostilities or warlike operations (whether there be a declaration of war or not) but this Subparagraph 8. not to exclude collision or contact with aircraft, rockets or similar missiles, or with any fixed or floating object, or stranding, heavy weather, fire or explosion unless caused directly by a hostile act by or against a belligerent power which act is independent of the nature of the voyage or service which the Vessel concerned or, in the case of a collision, any other vessel involved therein, is performing. As used herein, "power" includes any authority maintaining naval, military or air forces in association with a power.

If war risks or other risks excluded by this clause are hereafter insured by endorsement on this Policy, such endorsement shall supersede the above conditions only to the extent that the terms of such endorsement are inconsistent therewith and only while such endorsement remains in force.

Policy Number: HUL0100185

RLI Insurance Company

# PROTECTION AND INDEMNITY CLAUSES

| Amount Insured | Rate | Premium |
|---|---|---|
| $ 1,000,000 | N/A | $ 19,550 |

JDJ Marine, Inc. _____ hereinafter called the Assured.

Loss, if any, payable to _____ TBA _____ or order.

In the sum of _____ One Million ($1,000,000) _____ Dollars

at and from the __15th__ day of ____May____, __2007__, at __12:01 A.M Local Standard__ time until the __15th__ day of ____May____, __2008__, at __12:01 A.M Local Standard__ time against the liabilities of the Assured as hereinafter described, and subject to the terms and conditions hereinafter set forth, in respect of the Vessel called the ____See Vessel Schedule OMP 112____ (Tonnage ____N/A____ ) or by whatsoever other names the said Vessel is or shall be named or called.

In consideration of the Stipulations Herein Named and of _____ Nineteen Thousand Five Hundred Fifty _____ Dollars, $ 19,550 ____ being Premium at the rate of _____ N/A _____ .

The Assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall as owners of the Vessel named herein, have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth:

1.  **Loss Of Life, Injury And Illness**

    Liability for loss of life of, or personal injury to, or illness of, any person, excluding, however, unless otherwise agreed by endorsement hereon, liability under any Compensation Act to any employee of the Assured, (other than a seaman) or in case of death to his beneficiaries or others.

    Protection hereunder for loss of life or personal injury arising in connection with the handling of cargo of the Vessel named herein shall commence from the time of receipt by the Assured of the cargo on dock or wharf or on craft alongside the said Vessel for loading thereon and shall continue until delivery thereof from dock or wharf of discharge or until discharge from the said Vessel on to another vessel or craft.

2.  **Hospital, Medical, Or Other Expenses**

    Liability for hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of, personal injury to, or illness of any member of the crew of the Vessel named herein or any other person. Liability hereunder shall also include burial expenses not exceeding Two Hundred ($200) Dollars, when necessarily and reasonably incurred by the Assured for the burial of any seaman of said Vessel.

3.  **Repatriation Expenses**

    Liability for repatriation expenses of any member of the crew of the Vessel named herein, necessarily and reasonably incurred, under statutory obligation, excepting such expenses as arise out of or ensue from the termination of any agreement in accordance with the terms thereof, or by mutual consent, or by sale of the said Vessel, or by other act of the Assured. Wages shall be included in such expenses when payable under statutory obligation, during unemployment due to the wreck or loss of the said Vessel.

### 4. Damage To Other Vessel Or Property On Board Caused By Collision

Liability for loss of, or damage to, any other vessel or craft, or to the freight thereof, or property on such other vessel or craft, caused by collision with the Vessel named herein, insofar as such liability would not be covered by full insurance under the _____ American Institute Hull _____ (including the four-fourths running-down clause).

### Principle Of Cross-Liabilities To Prevail

a. Claims under this clause shall be settled on the principle of Cross-Liabilities to the same extent only as provided in the running-down clause above mentioned.

b. Claims under this clause shall be divided among the several classes of claims enumerated in this Policy and each class shall be subject to the deduction and special conditions applicable in respect of such class.

c. Notwithstanding the foregoing, if any one or more of the various liabilities arising from such collision has been compromised, settled or adjusted without the written consent of the Assurer, the Assurer shall be relieved of liability for any and all claims under this clause.

### 5. Damage To Other Vessel Or Property On Board Not Caused By Collision

Liability for loss of or damage to any other vessel or craft, or to property on such other vessel or craft, not caused by collision, provided such liability does not arise by reason of a contract made by the Assured.

Where there would be a valid claim hereunder but for the fact that the damaged property belongs to the Assured, the Assurer shall be liable as if such damaged property belonged to another, but only for the excess over any amount recoverable under any other insurance applicable on the property.

### 6. Damage To Docks, Piers, Etc.

Liability for damage to any dock, pier, harbor, bridge, jetty, buoy, lighthouse, breakwater, structure, beacon, cable, or to any fixed or movable object or property whatsoever, except another vessel or craft, or property on another vessel or craft.

Where there would be a valid claim hereunder but for the fact that the damaged property belongs to the Assured, the Assurer shall be liable as if such damaged property belonged to another, but only for the excess over any amount recoverable under any other insurance applicable on the property.

### 7. Removal Of Wreck

Liability for cost or expenses of, or incidental to, the removal of the wreck of the Vessel named herein when such removal is compulsory by law, provided, however, that:

a. There shall be deducted from such claim for cost or expenses, the value of any salvage from or which might have been recovered from the wreck, inuring, or which might have inured, to the benefit of the Assured.

b. The Assurer shall not be liable for such costs or expenses which would be covered by full insurance under the _____ American Institute Hull _____ or claims arising out of hostilities or war-like operations, whether before or after declaration of war.

### 8. Cargo

Liability for loss of, or damage to, or in connection with cargo or other property, excluding mail and parcel post, including baggage and personal effects of passengers, to be carried, carried, or which has been carried on board the Vessel named herein.

Provided, however, that no liability shall exist under this provision for:

a.  Specie, Bullion, Precious Stones, Etc.

Loss, damage or expense arising out of or in connection with the custody, care, carriage or delivery of specie, bullion, precious stones, precious metals, jewelry, silks, furs, bank notes, bonds or other negotiable documents or similar valuable property, unless specially agreed to and accepted for transportation under a form of contract approved, in writing, by the Assurer.

b.  Refrigeration

Loss of, or damage to, or in connection with cargo requiring refrigeration unless the space, apparatus and means used for the care, custody, and carriage thereof have been surveyed by a classification surveyor or other competent disinterested surveyor under working conditions before the commencement of each voyage and found in all respects fit, and unless accepted for transportation under a form of contract approved, in writing, by the Assurer.

c.  Passengers' Effects

Loss, damage, or expense in connection with any passenger's baggage or personal effects, unless the form of ticket issued to the passenger shall have been approved, in writing, by the Assurer.

d.  Stowage In Improper Places

Loss, damage, or expense arising from stowage of underdeck cargo on deck or stowage of cargo in spaces not suitable for its carriage, unless the Assured shall show that every reasonable precaution has been taken by him to prevent such improper stowage.

e.  Deviation

Loss, damage, or expense arising from any deviation, or proposed deviation, not authorized by the contract of affreightment, known to the Assured in time to insure specifically the liability therefor, unless notice thereof is given to the Assurer and the Assurer agrees, in writing, that such insurance is unnecessary.

f.  Freight On Cargo Short Delivered

Freight on cargo short delivered, whether or not prepaid or whether or not included in the claim and paid by the Assured.

g.  Misdescription Of Goods

Loss, damage, or expense arising out of or as a result of the issuance of Bills of Lading which, to the knowledge of the Assured, improperly describe the goods or their containers as to condition or quantity.

h.  Failure To Surrender Bill Of Lading

Loss, damage, or expense arising out of delivery of cargo without surrender of Bill of Lading.

And provided further that:

Protective Clauses Required In Contract Of Affreightment

(1)  Liability hereunder shall in no event exceed that which would be imposed by law in the absence of contract.

(2) Liability hereunder shall be limited to such as would exist if the Charter Party, Bill of Lading or Contract of Affreightment contained the following clause (in substitution for the clause commonly known as the Jason Clause):

"In the event of accident, danger, damage or disaster before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the shipowner is not responsible, by statute or contract or otherwise, the shippers, consignees or owners of the cargo shall contribute with the shipowner in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo."

When cargo is carried by the Vessel named herein under a Bill of Lading or similar document of title subject or made subject to the Carriage of Goods by Sea Act, April 16, 1936, liability hereunder shall be limited to such as is imposed by said Act, and if the Assured or the Vessel named herein assumes any greater liability or obligation than the minimum liabilities and obligations imposed by said Act, such greater liability or obligation shall not be covered hereunder.

**Limit Per Package**

When cargo is carried by the Vessel named herein under a Charter Party, Bill of Lading or Contract of Affreightment not subject or made subject to the Carriage of Goods by Sea Act, April 16, 1936, liability hereunder shall be limited to such as would exist if said Charter Party, Bill of Lading, or Contract of Affreightment contained the following clauses: a clause limiting the Assured's liability for total loss or damage to goods shipped to Two Hundred Fifty ($250) Dollars per package, or in case of goods not shipped in packages, per customary freight unit, and providing for pro rata adjustment on such basis for partial loss or damage; a clause exempting the Assured and the Vessel named herein from liability for losses arising from unseaworthiness, even though existing at the beginning of the voyage, provided that due diligence shall have been exercised to make the Vessel seaworthy and properly manned, equipped, and supplied; a clause providing that the carrier shall not be liable for claims in respect of cargo unless notice of claim is given within the time limited in such Bill of Lading and suit is brought thereon within the limited time prescribed therein; and such other protective clauses as are commonly in use in the particular trade; provided the incorporation of such clauses is not contrary to law.

The foregoing provisions as to the contents of the Bill of Lading and the limitation of the Assurer's liability may, however, be waived or altered by the Assurers on terms agreed, in writing.

(3) **Assured's Own Cargo**

Where cargo on board the Vessel named herein is the property of the Assured, such cargo shall be deemed to be carried under a contract containing the protective clauses described in the preceding paragraph, and such cargo shall be deemed to be fully insured under the usual form of cargo policy, and in case of loss thereof or damage thereto the Assured shall be insured hereunder in respect of such loss or damage only to the extent that they would have been covered if said cargo had belonged to another, but only in the event and to the extent that the loss or damage would not be recoverable under a cargo policy as hereinbefore specified.

(4) **Cotton Bills Of Lading**

The Assured's liability for Claims under Custody Cotton Bills of Lading issued under the conditions laid down by the Liverpool Bill of Lading Conference Committee, is covered subject to previous notice of contract and payment of an extra premium of two (2) cents per ton gross register per voyage, but such additional premium shall be waived provided every bale is re-marked at port of shipment on another portion of the bale.

(5) **Land Transportation Not Included**

No liability shall exist hereunder for any loss, damage or expense in respect of cargo or other property being transported on land or on another vessel.

No liability shall exist hereunder for any loss, damage or expense in respect of cargo before loading on or after discharge from the Vessel named herein caused by flood, tide, windstorm, earthquake, fire, explosion, heat, cold, deterioration, collapse of wharf, leaky shed, theft or pilferage unless such loss, damage or expense is caused directly by the Vessel named herein, her master, officers or crew.

9. **Customs, Immigration Or Other Fines Or Penalties**

Liability for fines and penalties, including expenses necessarily and reasonably incurred in avoiding or mitigating same, for the violation of any of the laws of the United States, or of any State thereof, or of any foreign country; provided, however, that the Assurer shall not be liable to indemnify the Assured against any such fines or penalties resulting directly or indirectly from the failure, neglect, or default of the Assured or his managing officers or managing agents to exercise the highest degree of diligence to prevent a violation of any such laws.

10. **Mutiny Or Other Misconduct**

Expenses incurred in resisting any unfounded claim by the master or crew or other persons employed on the Vessel named herein, or in prosecuting such persons in case of mutiny or other misconduct.

11. **Extraordinary Expenses In Case Of Quarantine, Etc.**

Liability for extraordinary expenses resulting from outbreak of plague or other contagious disease, including such expenses incurred for disinfection of the Vessel named herein or persons on board, or for quarantine, but excluding the ordinary expenses of loading and/or discharging and the wages and provisions of crew and passengers; each claim under this provision is subject to a deduction of Two Hundred ($200) Dollars. It is provided further, however, that if the Vessel named herein be ordered to proceed to a port when it is or should be known that calling there will subject the Vessel to the extraordinary expenses above mentioned, or to quarantine or disinfection there or elsewhere, the Assurer shall be under no obligation to indemnify the Assured for any such expenses.

12. **Deviation For Purpose Of Landing Injured**

Net loss due to deviation incurred solely for the purpose of landing an injured or sick seaman in respect of port charges incurred, insurance, bunkers, store, and provisions consumed as a result of the deviation.

13. **Cargo's Proportion Of General Average**

Liability for, or loss of, cargo's proportion of general average, including special charges, in so far as the Assured cannot recover same from any other source; subject however, to the exclusions of Section **(8)** and provided, that if the Charter Party, Bill of Lading, or Contract of Affreightment does not contain the quoted clause under Section **(8) (bb)** the Assurer's liability hereunder shall be limited to such as would exist if such clause were contained therein.

14. **Costs And Charges**

Costs, charges, and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the Vessel named herein, subject to the agreed deductibles applicable, and subject further to the conditions and limitations hereinafter provided.

## GENERAL CONDITIONS AND/OR LIMITATIONS

### Prompt Notice Of Claim

Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Assurer is or may become liable, the Assured will use due diligence to give prompt notice thereof and forward to the Assurer as soon as practicable after receipt thereof, all communications, processes, pleadings and other legal papers or documents relating to such occurrences.

### Settlement Of Claims

The Assured shall not make any admission of liability, either before or after any occurrence which may result in a claim for which the Assurer may be liable. The Assured shall not interfere in any negotiations of the Assurer, for settlement of any legal proceedings in respect of any occurrences for which the Assurer is liable under this policy; provided, however, that in

respect of any occurrence likely to give rise to a claim under this Policy, the Assured are obligated to and shall take steps to protect their (and/or the Assurer's) interests as would reasonably be taken in the absence of this or similar insurance. If the Assured shall fail or refuse to settle any claim as authorized by Assurer's, the liability of the Assurer to the Assured shall be limited to the amount for which settlement could have been made.

## Assured To Assist With Evidence In Defense, Etc.

Whenever required by the Assurer the Assured shall aid in securing information and evidence and in obtaining witnesses and shall cooperate with the Assurer in the defense of any claim or suit or in the appeal from any judgment, in respect of any occurrence as hereinbefore provided.

## Law Costs

The Assurer shall not be liable for the cost or expense of prosecuting or defending any claim or suit unless the same shall have been incurred with the written consent of the Assurer, or the Assurer shall be satisfied that such approval could not have been obtained under the circumstances without unreasonable delay, or that such costs and charges were reasonably and properly incurred, such cost or expense being subject to the deductible. The cost and expense of prosecuting any claim in which the Assurer shall have an interest by subrogation or otherwise, shall be divided between the Assured and the Assurer, proportionately to the amounts which they would be entitled to receive respectively, if the suit should be successful.

The Assurer shall be liable for the excess where the amount deductible under this Policy is exceeded by **(a)** the cost of investigating and/or successfully defending any claim or suit against the Assured based on a liability or an alleged liability of the Assured covered by this insurance, or **(b)** the amount paid by the Assured either under a judgment or an agreed settlement based on the liability covered herein including all costs, expenses of defense and taxable disbursements.

## Subrogation

The Assurer shall be subrogated to all the rights which the Assured may have against any other person or entity in respect of any payment made under this Policy, to the extent of such payment, and the Assured shall, upon the request of the Assurer, execute all documents necessary to secure to the Assurer such rights.

The Assurer shall be entitled to take credit for any profit accruing to the Assured by reason of any negligence or wrongful act of the Assured's servants or agents, up to the measure of their loss, or to recover for their own account from third parties any damage that may be provable by reason of such negligence or wrongful act.

## Cover Elsewhere

Provided that where the Assured is, irrespective of this insurance, covered or protected against any loss or claim which would otherwise have been paid by the Assurer, under this Policy, there shall be no contribution by the Assurer on the basis of double insurance or otherwise.

## Assignments

No claim or demand against the Assurer under this Policy shall be assigned or transferred, and no person, excepting a legally appointed receiver of the property of the Assured, shall acquire any right against the Assurer by virtue of this insurance without the expressed consent of the Assurer.

## Actions Against Assurers

No action shall lie against the Assurer for the recovery of any loss sustained by the Assured unless such action is brought against the Assurer within one (1) year after the final judgment or decree is entered in the litigation against the Assured or in case the claim against the Assurer accrues without the entry of such final judgment or decree, unless such action is brought within one (1) year from the date of the payment of such claim.

## Time Limitation

The Assurer shall not be liable for any claim not presented to the Assurer with proper proofs of loss within six (6) months after payment thereof by the Assured.

## Lay-Up Returns

At the expiration of this Policy, the Assurer is to return _____TBA_____ for each thirty (30) consecutive days during the term of this insurance the Vessel may be laid up in a safe port; or _____TBA_____ for each thirty (30) consecutive days during the term of this insurance the Vessel may be laid up in a safe port without loading and/or discharging and without crew or cargo on board, provided the Assured give written notice to the Assurer as soon as practicable after the commencement and the termination of such lay-up period.

## Cancellation Provisions

a.  If the Vessel named herein should be sold or requisitioned and this Policy be cancelled and surrendered, the Assurer to return _____TBA_____ for each thirty (30) consecutive days of the unexpired term of this insurance.

b.  In the event of nonpayment of premium within sixty (60) days after attachment, this Policy may be cancelled by the Assurer upon five (5) days written notice being given the Assured.

c.  In the event that Sections 182 to 189, both inclusive, of U. S. Code, Title 46, or any other existing law or laws determining or limiting liability of shipowners and carriers, or any of them, shall, while this Policy is in force, be modified, amended or repealed, or the liabilities of shipowners or carriers be increased in any respect by legislative enactment, the Assurer shall have the right to cancel said insurance upon giving thirty (30) days written notice of their intention so to do, and in the event of such cancellation, make return of premium upon a pro rata daily basis.

Notwithstanding anything to the contrary contained in this Policy, no liability attaches to the Answer:

For any loss, damage, or expense which would be payable under the terms of the _____American Institute Hull_____ form of policy on hull and machinery, etc. if the Vessel were fully covered by such insurance sufficient in amount to pay such loss, damage, or expense.

For any loss, damage or expense sustained by reason of capture, seizure, arrest, restraint or detainment, or the consequence thereof or of any attempt thereat; or sustained in consequence of military, naval or air action by force of arms, including mines and torpedoes or other missiles or engines of war, whether of enemy or friendly origin; or sustained in consequence of placing the Vessel in jeopardy as an act or measure of war taken in the actual process of a military engagement, including embarking or disembarking troops or material of war in the immediate zone of such engagement; and any such loss, damage and expense shall be excluded from this Policy without regard to whether the Assured's liability therefor is based on negligence or otherwise, and whether before or after a declaration of war.

For any loss, damage, or expense arising from the cancellation or breach of any charter, bad debts, fraud of agents, insolvency, loss of freight hire or demurrage, or as a result of the breach of any undertaking to load any cargo, or in respect to the Vessel named herein engaging in any unlawful trade or performing any unlawful act, with the knowledge of the Assured.

For any loss, damage, expense, or claim arising out of or having relation to the towage of any vessel or craft, whether under agreement or not, unless such towage was to assist such other vessel or craft in distress to a port or place of safety, provided, however, that this clause shall not apply to claims under this Policy for loss of life or personal injury to passengers and/or members of the crew of the Vessel named herein arising as a result of towing.

For any claim for loss of life or personal injury in relation to the handling of cargo where such claim arises under a contract of indemnity between the Assured and his sub-contractor.

It is expressly understood and agreed if and when the Assured under this Policy has any interest other than as a shipowner in the Vessel or Vessels named herein, in no event shall the Assurer be liable hereunder to any greater extent than if such Assured were the owner and were entitled to all the rights of limitation to which a shipowner is entitled.

Unless otherwise agreed by endorsement to this Policy, liability hereunder shall in no event exceed that which would be imposed on the Assured by law in the absence of contract.

Liability hereunder in respect of any one accident or occurrence is limited to the amount hereby insured.

Policy Number: HUL0100185                                                    RLI Insurance Company

# VESSEL SCHEDULE

### As of <u>5/15/2007</u>

| Vessel No. | Vessel Name | Hull Value | Hull Rate/ Hull Deductible | Hull Annual Premium | P&I Annual Premium | Attach Date | Detach Date |
|------------|-------------|------------|----------------------------|---------------------|--------------------|-------------|-------------|
| 1 | M/V "Diploma" | $500,000 | 1.50% $10,000 | $7,500 | $19,550 | 5/15/2007 | |
| Totals* | | $500,000 | | $7,500 | $19,550 | | |

\* Totals exclude vessels not currently attached

OMP 112 (10/06)                                                    Page  1 of 1

INSURED

Policy Number: HUL0100185                                                RLI Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AIMU
# EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE
## WITH U.S.A. ENDORSEMENT
### (March 1, 2003)

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

1.    In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from:

1.1 ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel;

1.2 the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof;

1.3 any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;

1.4 the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

# RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE
## (U.S.A. ENDORSEMENT)

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that:

if fire is an insured peril

and

where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

and

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses **1.1, 1.2,** and **1.4** of the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, EXCLUDING, however, any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

OMP 614 (08/05)                                                          Page 1 of 1

Policy Number: HUL0100185                                          RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OIL POLLUTION CLAUSE 1990

This insurance does not constitute evidence of financial responsibility under the Oil Pollution Act of 1990 or any similar Federal, State or Local Law, and it is a condition of this insurance that it shall not be submitted to the United States Coast Guard or any other Federal, State or Local Agency as evidence of financial responsibility. The Underwriters do not consent to be Guarantors.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

INSURED

Policy Number:  HUL0100185

RLI Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMERICAN INSTITUTE
# POLLUTION EXCLUSION CLAUSE

## (Liabilities)

This Policy will not indemnify the Assured against any sum(s) paid, nor insure against any liability, with respect to any loss, damage, cost, liability, expense, fine or penalty of any kind or nature whatsoever, and whether statutory or other- wise, incurred by or imposed on the Assured, directly or indirectly, in consequence of, or with respect to, the actual or potential discharge, emission, spillage or leakage upon or into the seas, waters, land or air, of oil, fuel, cargo, petroleum products, chemicals or other substances of any kind or nature whatsoever. This exclusion, however, shall not apply to sums paid or payable, or liability of the Assured, for the physical loss of the property discharged, emitted, spilled or leaked, PROVIDED that such sums, or such liability, is covered elsewhere under the terms and conditions of this Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Policy Number: HUL0100185                                              RLI Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AIMU
# U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE

Whenever coverage provided by this Policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

OMP 630 (08/05)                                                          Page 1 of 1

INSURED

Policy Number: HUL0100185                                              RLI Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AIMU
# CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, AND ELECTROMAGNETIC EXCLUSION CLAUSE

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

INSURED

Policy Number: HUL0100185                                              RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NAVIGATION WARRANTY

Warranted that the Vessel(s) shall be restricted to the navigational areas as listed below:

Vessel shall be confined to New York Harbor, including its tributaries and sounds not to exceed 1 mile offshore.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

OMH 647 (04/05)                                                              Page 1 of 1

INSURED

Policy Number: HUL0100185                                                    RLI Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ABSOLUTE EXCLUSION OF PUNITIVE DAMAGES

It is agreed that this Policy shall not apply to any obligation to pay fines, penalties or exemplary, or punitive damages including treble damages, or any other damages resulting from the multiplication of compensatory damages. If a suit shall have been brought against the Insured for claim insured by this Policy seeking both compensatory and punitive or exemplary damages, then this Company will afford a defense to such action. The Company, however, shall not have an obligation to pay for any costs, interest, or damages attributable to fines, punitive or exemplary damages.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

INSURED

Policy Number: HUL0100185

RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DIVER(S) EXCLUSION

Warranted free from all claims (contractually assumed or otherwise) arising in respect of divers, and/or diving operations, and/or out of the operation by the Assured of submarines, mini-submarines, remote control vessels and/or diving bells.

This exclusion shall not apply, however, with respect to claims for claims which are attributable to the negligence in the navigation of the scheduled Vessel(s).

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

INSURED

Policy Number:   HUL0100185                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CERTIFIED TERRORISM LOSS

1.  The following definitions are made a part of this policy.

    A.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:

        1.  To be an act of terrorism;

        2.  To be a violent act or an act that is dangerous to human life, property, or infrastructure;

        3.  To have resulted in damage:

            a.  Within the United States; or

            b.  To an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission; and

        4.  To have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

    B.  "Certified terrorism loss" means loss that results from a "certified act of terrorism."

2.  The "terms" of any terrorism exclusion or limitation in coverage that is part of or that is attached to this policy are amended by the following provision:

    This exclusion or limitation in coverage does not apply to "certified terrorism loss."

3.  If the Secretary of the Treasury determines that the amount of "certified terrorism loss" has exceeded the maximum annual liability as set forth by the Federal Terrorism Risk Insurance Act of 2002 or any amendments thereto, we will not pay for any portion of "certified terrorism loss" that exceeds the maximum annual liability.

4.  Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to this policy provide coverage for any loss that would otherwise be excluded by this policy under:

    A.  Exclusions that address war, military action, or nuclear hazard; or

    B.  Any other exclusion.

5.  The absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this policy under:

    A.  Exclusions that address war, military action, or nuclear hazard; or

    B.  Any other exclusion.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

OMP 2221 (02/03)                                                     Page 1 of 1

INSURED

Policy Number: HUL0100185

RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TERRORISM EXCLUSION

1. We will not pay for loss, damage, cost or expense caused directly or indirectly by "terrorism" or any action taken to control, prevent, or suppress terrorism. Such loss, damage, cost or expense is excluded regardless of any other cause or event that contributes concurrently or in any sequence to this loss.

   "Terrorism" for purposes of this exclusion means:

   A. The disruption or threatened disruption of financial, governmental, transportation, communication, computer or utility services which appears to be for political, religious, economic, cultural, ethnic, ecological or racial ends;

   B. The use or threatened use of force, violence or criminal conduct which appears to be for political, religious, economic, cultural, ethnic, ecological or racial ends;

   C. The use or threatened use of force, violence or criminal conduct for the apparent purpose of or with the result of harming or intimidating a civilian population;

   D. The use or threatened use of biological, chemical or nuclear substances for the apparent purpose of or with the result of harming or intimidating a civilian population;

   E. Any act or threatened act of force, violence or criminal conduct by any person or persons acting on behalf of or in connection with any organization with a stated goal of overthrowing or influencing the policy of any government, whether lawful or otherwise; and/or

   F. Any act or threatened act of force, violence or criminal conduct that has been labeled, identified or described as a terrorist act by the executive branch of the United States government.

2. Fire Exception

   The following provision applies only where relevant state law requires coverage for fire losses resulting from acts of terrorism, and where a premium for such has been paid.

   If an act of terrorism results in fire, we will pay for the loss or damage caused by that fire. This exception for fire applies only to direct loss or damage by fire to covered property. This exception does not apply to coverage for loss of earnings, extra expense, or fire legal liability.

3. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to this policy provide coverage for any loss that would otherwise be excluded by this policy under:

   A. Exclusions that address war, military action, or nuclear hazard; or

   B. Any other exclusion.

4. The absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this policy under:

   A. Exclusions that address war, military action, or nuclear hazard; or

   B. Any other exclusion.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number:  HUL0100185                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL TERRORISM EXCLUSION

**(Relating to the Certified Terrorism Loss Endorsement already on this Policy.)**

Applicability of the provisions of this endorsement.

**A.** The provisions of this endorsement will apply on the date one of the following situations first occurs:

   **1.** The federal Terrorism Risk Insurance Program ("Program") established by the Terrorism Risk Insurance Act of 2002, terminates; or

   **2.** The Program is renewed, extended or otherwise continued in effect without a requirement to make terrorism coverage available to you and with changes that:

      **a.** Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      **b.** Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      **c.** Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

   The Program is scheduled to terminate at the end of December 31, 2007 unless renewed, extended or otherwise continued by act of Congress.

**B.** If the provisions of this endorsement become applicable, OMP 2221 – **CERTIFIED TERRORISM LOSS** is rescinded in its entirety and will become void. Any other endorsements or policy conditions pertaining to terrorism and a part of this policy remain in effect until the expiration of this policy.

**C.** If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" will continue in effect unless we notify you of changes to that endorsement in response to federal law.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

INSURED

Policy Number: HUL0100185                                    RLI Insurance Company

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.


_Jean M. Stephenson_
Corporate Secretary

_M J Stone_
President & COO

ILF 0001 (01/01)

Policy Number: HUL0100185                                          RLI Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL LOSS ONLY ENDORSEMENT

This policy shall provide Total Loss Only coverage. Hull deductible applicable for General Average, Salvage and Sue & Labor.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Policy Number:  HUL0100185

RLI Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CHANGE ENDORSEMENT

Endorsement Effective Date (12:01 a.m.):  05/15/2007

Endorsement Number:  1

Named Insured:  JDJ Marine, Inc.

☐ ADDITIONAL PREMIUM
☒ RETURN PREMIUM          <$100>
☐ NIL
☐
☐
☐

<$100>

It is understood and agreed that this policy is amended as follows:

| | | |
|---|---|---|
| ☐ 1.  PREMIUM | ☐ 7.  COVERAGE/LIMITS | ☐ 13. COVERAGE IS CANCELLED |
| ☐ 2.  ADVANCE PREMIUM | ☐ 8.  INCEPTION DATE | ☐ SHORT RATE |
| ☐ 3.  MINIMUM PREMIUM | ☐ 9.  EXPIRATION DATE | ☐ PRO RATE |
| ☐ 4.  RATE | ☒ 10. TERMS | ☐ MINIMUM PREMIUM |
| ☐ 5.  INSTALLMENT | ☐ 11. NAME OF INSURED | ☐ 14. ADDITIONAL INSURED |
| ☐ 6.  AUDIT | ☐ 12. ADDRESS OF INSURED | BUT ONLY AS RESPECTS THE OPERATIONS OF THE NAMED INSURED |

This policy is hereby amended to remove Terrorism coverage per the Insured's request.

DATE OF ISSUE:  8/1/2007

Authorized Signature

## ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

OMP 2100 (04/05)

Page  1 of 1

INSURED

Policy Number:  HUL0100185

RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LAY-UP WARRANTY

Vessel shall be laid up October 1st through April 1st.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

MAN-NYC-1219(05/07)

INSURED

Page 1 of 1

# EXHIBIT "B"

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 13
DATE FILED: 4/20/07

At the United States District
Court held in and for the
Southern District of New York, at
the Courthouse, 500 Pearl Street,
in the City, County and State of
New York, on this   day of March,
2007

-----------------------------------x

COMMERCE BANK, N.A.,

                Plaintiff,

                               CASE NO.: 06 CIV 8301 (GEL)

                               Civil Action

                               FINAL JUDGMENT AND
                               ORDER OF ARREST OF VESSEL
                               <ins>AND POSSESSION OF COLLATERAL</ins>

               -vs-

JDJ MARINE, INC. DBA LEISURE
YACHT CHARTERS, DAVID E. SOMMERHALTER,
PAULETTE SOMMERHALTER, JOSEPH N.
TURI, JEAN TURI, and
JDJ MARINE, INC. DBA LEISURE
YACHT CHARTERS, DAVID E.
SOMMERHALTER, PAULETTE SOMMERHALTER,
JOSEPH N. TURI AND JEAN TURI,
and DIPLOMAT MOTOR YACHT,
OFFICIAL NUMBER D229917, GROSS
TONNAGE 99, NET TONNAGE 67,
YEAR BUILT 1930, PIER 84,
WEST 43RD STREET, NEW YORK,
NEW YORK and Her Engines,
Boilers, etc.,

                         Defendants.
-----------------------------------x

        THIS MATTER being opened to the Court upon the

application of the plaintiff, COMMERCE BANK, N.A., by its attorneys, OSTROWITZ & OSTROWITZ, ESQS., and upon all of the prior papers and proceedings heretofore had herein, and the plaintiff having pleaded and proven the elements of its causes of action, and no appearance having been made by the defendants with respect thereto, nor has an Answer been filed on behalf of any of the defendants herein, and good cause appearing therefor,

NOW, upon reading and filing the Order to Show Cause, the Affirmations of ALAN R. OSTROWITZ, ESQ., dated the 27th day of February, 2007, together with the Summons and Verified Complaint, and proof of due service thereof, and there being no answer filed, request for an extension of time or opposition with respect thereto, it is,

ORDERED AND ADJUDGED, that the defendants, jointly and severally, and each and all of them, be and they hereby are foreclosed of any and/or all right, title and/or interest in and/or to the subject personal property collateral, described more fully hereinafter and, additionally, the defendants be and the same hereby are foreclosed of any and/or all right, title and/or interest in and or to the Federally documented vessel, pursuant to the plaintiff's Preferred Ship's Mortgage, i.e., DIPLOMAT MOTOR YACHT,

OFFICIAL NUMBER D229917, GROSS TONNAGE 99, NET TONNAGE 67, YEAR BUILT
1930, PIER 84, WEST 43RD STREET, NEW YORK, NEW YORK and Her Engines,
Boilers, together with all log books, manuals, trip records,
maintenance records, inspection reports, seaworthiness certificates,
and other historical records or information relating to the vessel,
all accounts, general intangibles, instruments, monies, payments and
all other rights, arising out of a sale, lease or other disposition of
any of the property described in the collateral section of the
Preferred Ship Mortgage, all proceeds, records and data relating to
the foregoing, etc., and, further, in addition thereof, said
defendants be and hereby are justly indebted to the plaintiff in the
sum of $729,936.24, together with interest thereon at the rate of
$191.78 per diem, to the date of entry of Judgment, and counsel fees
in the sum of $7,370.00, and costs and disbursements, thereby
aggregating the total sum of $739,424.19, calculated through and
including March 1, 2007, for which sum Judgment in favor of the
plaintiff and against the defendants is hereby entered; and, it is
further,

ORDERED AND ADJUDGED, that JDJ MARINE, INC. DBA LEISURE YACHT
CHARTERS, DAVID E. SOMMERHALTER, PAULETTE SOMMERHALTER, JOSEPH N. TURI
and JEAN TURI, shall promptly and forthwith, upon service of the

within Order and Judgment, turn over to the plaintiff, the collateral, as the same is more fully described in the Complaint herein, and/or the products and proceeds thereof, i.e., equipment and machinery, including power-driven machinery and equipment, furniture and fixtures now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts and tools belonging thereto or for use in connection therewith, all inventory, raw materials, work in process and supplies now owned or hereinafter acquired, all accounts receivable now outstanding or hereafter arising, all contract rights and general and tangibles now in force or hereafter acquired, all instruments and chattel paper now owned or hereinafter acquired; and it is further,

ORDERED AND ADJUDGED, that the plaintiff has a valid, perfected security interest and lien in and on the collateral and/or the products and proceeds thereof, presently in possession of the defendants, as the same is described more fully in the Complaint, and the plaintiff herein is hereby given leave to hire such agents and representatives as are necessary to remove the collateral from the premises of the defendants, or wherever else the same may be located, without force, restraint or otherwise disturbing the peace, and the plaintiff is hereby given leave to

remove the collateral from its present location and, further, said defendants be and they hereby are foreclosed and any and/or all right, title and/or interest, in and/or to the subject collateral; and, it is further,

ORDERED AND ADJUDGED, that, by virtue of the defaults of the defendants, the plaintiff is entitled to the immediate arrest and seizure of the said vessel, i.e., DIPLOMAT MOTOR YACHT, OFFICIAL NUMBER D229917, GROSS TONNAGE 99, NET TONNAGE 67, YEAR BUILT 1930, PIER 84, WEST 43RD STREET, NEW YORK, NEW YORK and Her Engines, Boilers, etc., together with all log books, manuals, trip records, maintenance records, inspection reports, seaworthiness certificates, and other historical records or information relating to the vessel, all accounts, general intangibles, instruments, monies, payments and all other rights, arising out of a sale, lease or other disposition of any of the property described in the collateral section of the Preferred Ship Mortgage, all proceeds, records and data relating to the foregoing, etc., and the United States Marshal for the Southern District of New York, or any other District in which the subject vessel may be found, shall immediately seize and arrest the subject vessel, and expose the same for sale to satisfy the plaintiff's judgment and claims which are set forth herein; and, it is further,

ORDERED AND ADJUDGED, that in order to execute the within
Judgment, the plaintiff is further given leave to deliver a copy
of the within Judgment, certified as a true copy by the attorneys
for the plaintiff, to any Officer of this Court within the Distict
having jurisdiction thereof to execute the within Judgment without
further Order or process of this Court and said Officer may remove the
collateral and/or the products and proceeds thereof from the premises
of the defendants, or wherever else the same may be located, by the
use of such reasonable force, restraint or otherwise as may be
necessary in order to remove the said collateral from its present
location; and, it is
further,

ORDERED AND ADJUDGED, that upon receipt of the said
collateral as aforesaid, the plaintiff may sell, lease or
otherwise dispose of the said collateral in a commercially
reasonable manner and/or apply the products and proceeds thereof
to satisfy the obligation due and owing to the plaintiff
hereunder, and, in addition thereto, such additional fees, costs
and/or disbursements caused by the repossession of the collateral
pursuant to the terms hereof; and, it is further,

ORDERED AND ADJUDGED, that, following such sale, lease or

- 6 -

Case 1:07-cv-09546-GBD    Document 67-2    Filed 12/13/2007    Page 8 of 40

other disposition of the collateral and/or application of the products and proceeds as aforesaid, the defendants shall be liable for any deficiency balance remaining, for which sum the plaintiff may apply to this Court upon affidavit, *ex parte*, for such additional sum, if any; and, it is further,

ORDERED AND ADJUDGED, that the defendants, their agents, servants, representatives and all other persons, known or unknown, acting in their behalf or in concert with them, or any of them, be and they hereby are permanently restrained and enjoined from transferring, assigning, secreting or otherwise moving the collateral or dealing with the products and proceeds thereof subject herein from the location set forth in the security agreement, creating any rights in said property, or otherwise dealing with same; and, it is further,

ORDERED AND ADJUDGED, that the plaintiff may, if so elects, sell the subject collateral at public auction, in accordance with the usual rules and regulations of the public auctioneer, and the collateral may be struck off at the highest and best price obtained at such public auction, and said auction shall be deemed by this Court to have been conducted in a commercially reasonable manner; and, it is further,

ORDERED AND ADJUDGED, that the plaintiff may either take

possession of the collateral pursuant to the provisions of this

Order and Judgment, and/or may deliver an Execution to the Marshal for

the amount set forth hereinabove, as the plaintiff may so elect.


Dated:  New York, New York
        March , 2007
        April 20

                                    _____
                                    HON. GERARD E. LYNCH, U.S.D.J.



                    THIS DOCUMENT WAS ENTERED
                    ON THE DOCKET ON __4/23/07__


- 8 -